UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION
www.flmb.uscourts.gov

| | |
|---|---|
| In re: | Chapter 11 |
| CROFTON & SONS, INC., | Case No. 8:14-bk-4208-CPM |
| CROFTON L & D MEATS HOLDINGS, LLC, | Case No. 8:14-bk-5033-CPM |
| Debtors. | *Jointly Administered Under Case No. 8:14-bk-4208-CPM* |

_____ /

**DEBTORS' MOTION FOR ORDER AUTHORIZING THE SALE OF SUBSTANTIALLY ALL OF THEIR ASSETS AND THE ASSUMPTION AND ASSIGNMENT OF CERTAIN CONTRACTS AND LEASES FREE AND CLEAR OF ALL LIENS, CLAIMS, AND ENCUMBRANCES PURSUANT TO 11 U.S.C. §§ 363 AND 365**

CROFTON & SONS, INC. ("**Crofton**") and CROFTON L & D MEATS HOLDINGS, LLC ("**L&D**"), as debtors and debtors in possession (collectively, the "**Debtors**"), respectfully request the entry of an order authorizing the sale of the Assets (defined below) and the assumption and assignment of the Contracts (defined below) to the Purchaser (defined below) in accordance with the terms of the Purchase Agreement (defined below) free and clear of any and all liens, claims, and encumbrances pursuant to 11 U.S.C. §§ 363 and 365. In support of this motion (the "**Motion**"), the Debtors respectfully represent as follows:

### Jurisdiction and Venue

1.     This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334. The subject matter of this Motion is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper in this district pursuant to 28 U.S.C. § 1408.

2.      The statutory predicates for the relief sought in this Motion include 11 U.S.C. §§105, 363, 365, 1107, and 1108, and Rules 2002 and 6004 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").

## Background

3.      On April 16, 2014, Crofton filed with this Court its voluntary petition for relief under Chapter 11 of the Bankruptcy Code.  On May 1, 2014, L&D filed with this Court its voluntary petition for relief under Chapter 11 of the Bankruptcy Code.  Pursuant to orders of this Court, the Debtors' Chapter 11 cases are being jointly administered for procedural purposes only.

4.      Crofton manufactures food products and specializes in smoked meats such as sausage, turkey drums, and other pork, chicken, beef and turkey parts.  Crofton's assets are comprised of real property and improvements, furniture, fixtures, display items and accessories located at 10250 Woodberry Rd., Tampa, Florida (the "**Tampa Property**"), leases, licenses, contracts, intellectual property, inventory, trademarks and tradenames, vehicles, machinery, equipment, goodwill, accounts receivable, cash, and causes of action.

5.      L&D is engaged in the production and processing of meats such as rib eyes, beef stew, ox tails, pork and other chops, ribs, and several varieties of sausage under the Lee & Davis Country Meats label.  L&D's assets are comprised of real property and improvements, furniture, fixtures, display items and accessories located at 4794 Albany Highway, Waycross, Georgia 31503 (the "**Georgia Property**", and together with the Tampa Property, the "**Real Property**"), leases, licenses, contracts, intellectual property,

trademarks and tradenames, inventory, vehicles, machinery, equipment, goodwill, accounts receivable, cash, and causes of action.

      6.     The following parties have or may assert liens on or interests in certain of the Debtors' assets[1], generally described as follows:

| Lienholder | Asserted Collateral |
|---|---|
| Balboa Capital Corporation | Vehicle |
| Banc of America Leasing & Capital, LLC | Certain Equipment |
| Bank of America, N.A. | Mortgage on Tampa Property and blanket lien on Crofton and L&D personal property assets |
| Quitman Lee, et al. | Mortgage on Georgia Property |
| Celtic Commercial Finance | Certain Equipment (smoke houses at the Tampa Property) |
| Centennial Bank | Vehicle |
| Ford Motor Credit Company, LLC | Vehicle |
| Pinellas County Tax Collector | Personal property (Peppino's) |
| Hitec Food Capital Equipment, Inc. | Certain Equipment |
| LSQ Funding Group, L.C. | Accounts receivable and inventory |
| Susquehanna Commercial Finance, Inc. | Certain Equipment (steam boiler and brine chill shower) |
| UJP Consignments, Inc. and Dutch Packaging Co., Inc. | Priming lien on inventory, accounts, cash, general intangibles, books and records, cash securities and depository accounts, and related payment rights, rights to products, proceeds, profits setoffs, rebates, reimbursements, or other remuneration (no priming as to accounts that LSQ has a lien on); first lien on new collateral and unencumbered assets; junior lien on all assets encumbered by valid, prepetition liens; no lien on Chapter 5 actions |

---

[1] Debtors identify these asserted lienholders and their respective asserted collateral for notice purposes only and without acknowledging the validity, extent, enforceability, perfection or priority of any lien, as to which Debtors and their estates reserve all of their rights, including any cause of action, including, without limitation, under chapter 5 of the Bankruptcy Code.

### Sale of Assets and Assumption and Assignment of Contracts

7.      The Debtors and Colorado Boxed Beef Co., a Florida corporation ("**Colorado**") and Abe's Finest Meats, LLC, a Florida limited liability company affiliated with Colorado (the "**Purchaser**") entered into that certain Purchase and Sale Agreement (the "**Purchase Agreement**"), which provides for:

> (a)      the assumption by the Debtors and assignment to the Purchaser of certain prepetition and postpetition executory contracts and unexpired leases of real and personal property to which one or both of the Debtors is a party and which have been designated by the Purchaser (the "**Contracts**"); and

> (b)      the sale by the Debtors, and the purchase by the Purchaser, guaranteed by Colorado, of the Real Property (excluding any personal property of the principals and employees of the Debtors), rights, title, and interests under any United States Department of Agriculture licenses, registered trademarks, trade names, brands, recipes, inventory, customer lists, vehicles, machinery, equipment, and all other tangible and intangible personal property (excluding accounts receivable, cash on hand or deposited in accounts, tax benefits, and causes of action including any chapter 5 actions) (the "**Personal Property**" together with the Real Property, the "**Assets**")

for a purchase price consisting of (i) a cash component of Four Million Four Hundred Thousand and 00/100 Dollars ($4,400,000.00); (ii) the assumption of certain obligations;

and (iii) an Earn-out; all as described in greater detail in the Purchase Agreement. A copy

of the Purchase Agreement is attached hereto as **Exhibit A** and incorporated herein by

reference[2].

      8.      The Purchaser is not an insider of either of the Debtors.

## Relief Requested

      9.      Concurrently herewith, the Debtors have filed a motion to approve certain

bid procedures (the "**Bid Procedures**") for the submission and consideration of any bids

by any competing bidder for the Assets and Contracts, setting deadlines for objections to

the sale of the Assets, and the assertion of cure claims in connection with the assumption

and assignment of the Contracts.

      10.      The Debtors respectfully request the entry of an order approving the sale of

the Assets and the assumption and assignment of the Contracts to the Purchaser, or the

bidder with the highest and best offer as determined at the auction to be scheduled by

separate order of the Court (the "**Auction**"), on the terms set forth in the Purchase

Agreement free and clear of any and all claims (including "claims" as defined in Section

101(5) of the Bankruptcy Code), mortgages, pledges, liens, security interests, interests,

charges, encumbrances, setoffs, recoupments, cure claims, liabilities, debts, indebtedness,

costs, damages, judgments or obligations of any character whatsoever and whenever arising,

---

2      Exhibit A is voluminous. The Asset Purchase Agreement has been filed as an exhibit to this Motion and is available for inspection at the Bankruptcy Court located at Sam M. Gibbons United States Courthouse, 801 North Florida Avenue, Tampa, Florida. Additionally, parties in interest can request a copy of the Asset Purchase Agreement by contacting Debtor's counsel, Scott A. Stichter, Esquire, Stichter, Riedel, Blain & Prosser, P.A., by mail at 110 Madison Street, Suite 200, Tampa, Florida 33602; by phone at (813) 229-0144; by fax at (813) 229-1811; or by email at sstichter@srbp.com.

either before or after the Petition Date (collectively, the "**Encumbrances**") pursuant to Sections 363 and 365 of the Bankruptcy Code, Bankruptcy Rules 6004 and 6006, and an order of this Court granting this motion (the "**Sale Order**").  The Encumbrances of any creditors or claimants of any kind whatsoever will attach to the sale proceeds to the same extent, validity, and priority as existed on the Assets as of the Petition Date.

11.    Section 363(b)(1) states that the "trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."  11 U.S.C. §363(b)(1).  Courts usually defer to the business judgment of a debtor in deciding whether or not to authorize a debtor to sell property outside the ordinary course of business.  *See e.g., In re Continental Airlines, Inc.*, 780 F.2d 1223 (5th Cir. 1986); *In re Lionel Corp.*, 722 F.2d 1063, 1071 (2d Cir. 1983); *In re Mason's Nursing Center, Inc.*, 73 B.R. 360, 362 (Bankr. S.D. Fla. 1987).  In considering whether a debtor is justified in selling assets outside the ordinary course of business, courts consider four factors: (1) whether there is a sound business reason justifying the sale; (2) whether adequate and reasonable notice of the sale was provided to interested parties; (3) whether the sale has been negotiated in good faith; and (4) whether the purchase price is fair and reasonable.

12.    Section 365(a) authorizes the Debtors to assume or reject any executory contract or unexpired lease of the debtor.

13.    Section 363(f) of the Bankruptcy Code authorizes the sale of the Assets free and clear of all Encumbrances if:

    1)    Applicable non-bankruptcy law permits a sale of such property free and clear of such interests;

    2)    Such entity consents;

3)      Such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

4)      Such interest is in bona fide dispute; or

5)      Such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. §363(f) (1) – (5).

14.     The Debtors, through the exercise of their business judgment, have determined that the sale of the Assets and the assumption and assignment of the Contracts is in the best interests of the Debtors, their estates, and all creditors.  Indeed, the Bid Procedures and the Auction will ensure that the price is fair, reasonable, and is the highest and best offer for the Assets and the Contracts.

15.     The Debtors have given notice of the Bid Procedures to all persons or entities with actual, apparent, or alleged liens on the Assets.  The Debtors have authority to sell the Assets and assign the Contracts free and clear of liens pursuant to, *inter alia*, Section 363(f)(5) of the Bankruptcy Code.  In addition, consistent with Section 363(e) of the Bankruptcy Code, all asserted liens shall attach to the sale proceeds to the same extent, validity, and priority as existed on the Assets on the Petition Date.  Accordingly, any asserted lien claimant is adequately protected.

16.     The Assets are being sold and the Contracts are being assigned pursuant to good faith, arm's length negotiations and the competing bid process pursuant to the Bid Procedures Order.  Therefore, the Debtors request that the Sale Order contain findings of fact and conclusions of law that the sale is not avoidable pursuant to Section 363(n) of the

Bankruptcy Code, and that the Purchaser, or other highest and best bidder, is entitled to the protections under Section 363(m) of the Bankruptcy Code.

## Notice

17.    A copy of this Motion with attached Exhibits is being served on all creditors and parties in interest, as set forth on the attached matrix.  Accordingly, the Debtors request that the Court enter an order finding that such notice is adequate and sufficient and complies with the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure and the Local Rules of this Court.

18.    At the hearing on this Motion, the Debtors will request that the Court enter an order: (a) waiving the 14-day stays set forth in Bankruptcy Rule 6004(g) and 6006(d), (b) providing that the order granting this Motion be immediately enforceable, and (c) authorizing the immediate closing under the Purchase Agreement.

WHEREFORE, the Debtors respectfully request entry of an order granting the relief requested herein, and providing such other and further relief as is just and proper.

Dated this 2nd day of April, 2015.

*/s/ Scott A. Stichter*
Scott A. Stichter (FBN 0710670)
Amy Denton Harris (FBN 0634506)
Stichter, Riedel, Blain & Prosser, P.A.
110 East Madison Street, Suite 200
Tampa, Florida  33602
Telephone: (813) 229-0144
Facsimile: (813) 229-1811
Email: sstichter@srbp.com
          aharris@srbp.com
Attorneys for Debtors

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing *Debtors' Motion for Order Authorizing the Sale of Substantially all of their Assets and the Assumption and Assignment of Certain Contracts and Leases Free and Clear of all Liens, Claims, and Encumbrances Pursuant to 11 U.S.C. §§ 363 and 365* will be furnished on April 3, 2015, by either the Court's CM/ECF electronic noticing or U.S. mail, to:

All creditors and parties in interest listed on the attached matrix

Colorado Boxed Beef Co.
c/o John J. Rattigan Jr.
302 Prospect Road
Auburndale, Florida 33823

*    /s/ Scott A. Stichter*
Scott A. Stichter (FBN 0710670)

10790.1556760v9

Label Matrix for local noticing
113A-8
Case 8:14-bk-04208-CPM
Middle District of Florida
Tampa
Thu Apr  2 16:05:10 EDT 2015

Banc of America Leasing and Capital, LLC
c/o Bush Ross, P.A.
Attn: Andrew T. Jenkins, Esq.
Post Office Box 3913
Tampa, FL 33601-3913

Doug Belden
Hillsborough County Tax Collector
PO Box 30012
Tampa, FL 33630-3012

Doug Belden
Hillsborough County Tax Collector
c/o Brian T. FitzGerald
P.O Box 1110
Tampa, FL 33601-1110

Celtic Commercial Finance
c/o Stephanie C. Lieb, Esq.
Trenam Kemker
P.O. Box 1102
Tampa, FL 33601-1102

Centennial Bank, successor-in-interest to He
Thompson and Brooks
412 E. Madison Street
Suite 900
Tampa, Fl 33602-4617

Crofton & Sons, Inc.
Crofton L & D Meats Holdings, LLC
8:14-bk-5033-CPM (Jointly Administered)
10250 Woodberry Rd.
Tampa, FL 33619-8008

Crofton L & D Meats Holdings, LLC
10250 Woodberry Rd.
Tampa, FL 33619-8008

Ford Motor Credit Company, LLC
c/o Matt Holtsinger
P.O. Box 800
Tampa, FL 33601-0800

G&R business Solutions, LLC
c/o Howard A. Gordon, Managing Member
509 E. Jackson St.
Tampa, FL 33602-4904

Glen Bros. Meat Co., Inc.
c/o S. Douglas Knox
Quarles & Brady LLP
101 E. Kennedy Blvd., Suite 3400
Tampa, FL 33602-5195

Hahn Loeser & Parks LLP
800 Laurel Oak Drive, Suite 600
Naples, FL 34108-2705

Jennis & Bowen, P.L.
400 N. Ashley Drive
Suite 2540
Tampa, FL 33602-4317

Joe's Creek Industrial Park
c/o Karen E. Maller, Esq.
One Progress Plaza
Suite 1210
St Petersburg, FL 33701-4335

Kubota Credit Corporation
Law Offices of Daniel C. Consuegra
 9204 King Palm Drive
Tampa, FL 33619-1328

LSQ Funding Group, L.C.
c/o Kevin A. Reck, Esq., Foley & Lardner
111 N. Orange Avenue, Suite 1800
Orlando, FL 32801-2343

Quitman Lee
Anthony & Partners, LLC
c/o Allison C. Doucette, Esquire
201 N. Franklin Street, Suite 2800
Tampa, FL 33602-5816

Marcus Food Co.
240 N. Rock Rd. Ste. 246
Wichita, KS 67206-2245

Max-Pak LLC
2808 New Tampa Hwy.
Lakeland, FL 33815-3438

SS&G Parkland Consulting LLC
32125 Solon Road
Cleveland, OH 44139-3537

Susquehanna Commercial Finance, Inc.
Eric B. Zwiebel, P.A.
7900 Peters Road
Executive Court at Jacaranda
Building B, Suite 100
Plantation, FL 33324-4044

UJP Consignments, LLC
c/o Jennis & Bowen PL
400 N. Ashley Drive, Suite 2540
Tampa, FL 33602-4317

Wells Fargo Equipment Finance, Inc.
c/o Kenneth B. Jacobs, Esq.
GrayRobinson, P.A.
50 North Laura Street
Suite 1100
Jacksonville, FL 32202-3611

A-1 Resource, LLC
C/O Marcadis Singer, PA
5104 S Westshore Blvd
Tampa, FL 33611-5650

A. C. Legg, Inc.
PO Box 709
Calera, AL 35040-0709

Al Resource, LLC
9202 Florida Palm Dr.
Tampa, FL 33619-4352

ABC Research Labs
P.O Box 551422
Jacksonville, FL 32255-1422

ACC Distributions, Inc.
P.O. Box 439
Leesburg, GA 31763-0439

AIM Supply
7337 Bryan Dairy Rd.
Largo, FL 33777-1507

Aarons Pallets
8504 E. Adamo Drive, Suite 120
Tampa, FL 33619-3515

Ace Tool Co.
PO Box 536491
Atlanta, GA 30353-6491

Adams Air and Hydraulics, Inc.
Po Box 861115
Orlando, FL 32886-1115

Addison Foods, Inc.
16415 Addison Road, Suite 135
Addison, TX 75001-5404


Air Liquide American Corp.
PO Box 301046
Dallas, TX 75303-1046

Air Liquide Industrial U.S. LP
18222 E. Petroleum Dr.
Baton Rouge, LA 70809-6128

Air Liquide Industrial U.S. LP
Attn: Cheryl R. Lero
2700 Post Oak Blvd., 21st Floor
Houston, TX 77056-5797


Airgas USA LLC
2015 Vaughn Rd Bldg 400
Kennesaw, GA 30144-7802

Alkar Rapidpak, Inc.
4012 Payshere Circle
Chicago, IL 60674-0040

All Steel Buildings
c/o Theodore J. Hamilton, Esquire
P.O. Box 172727
Tampa, FL  33672-0727


All Steel Buildings & Components
10159 US Hwy 41 South
Gibsonton, FL 33534-4016

Alpha Management Systems, LLC
PO Box 3070
Poughkeepsie, NY 12603-0070

Amazon Hose & Rubber
4105 Seaboard Road
Orlando, FL 32808-3848


American Express
PO Box 360001
Fort Lauderdale, FL 33336-0001

American Express Travel Related Services
Company, Inc.
c o Becket and Lee LLP
POB 3001
Malvern, PA 19355-0701

Americold San Antonio
11850 Center Road
San Antonio, TX 78223-2144


Amerigas Propane LP
PO Box 660288
Dallas, TX 75266-0288

Ascentium Capital LLC
Attn: Michele Rodriguez
P.O. Box 301593
Dallas, TX  75303-1593

Ascentium Capital, LLC
23970 US 59 N.
Kingwood, TX 77339-1535


Ashberry Water Conditioners
2405 East 4th Ave
Tampa, FL 33605-5431

BCI Communications
9322 E. Dr. MLK Jr Blvd
Tampa, FL 33610-7404

Balboa Capital Corp.
Attn: Business Center
2010 Main St., 11th Floor
Irvine, CA 92614-8250


Balboa Capital Corporation
Attn: Legal Department
2010 Main Street, Suite 1100
Irvine, CA 92614-8250

Banc of America Leasing
P.O. Box 100918
Atlanta, GA 30384-0918

Banc of America Leasing & Capital, LLC
c/o Andrew T. Jenkins, Esq.
Bush Ross, P.A.
P.O. Box 3913
Tampa, FL 33601-3913


Bank of America
PO Box 650070
Dallas, TX 75265-0070

Bank of America, N.A.
2059 Northlake Pkwy., 3rd Floor
Tucker, GA 30084-5399

(p)BANK OF AMERICA
PO BOX 982238
EL PASO TX 79998-2238


Bank of America, N.A.
c/o Andrew T. Jenkins, Esq.
Bush Ross, P.A.
1801 N. Highland Avenue
Tampa, Florida 33602-2656

Bank of America, N.A.
c/o Andrew T. Jenkins, Esq.
Bush Ross, P.A.
P.O. Box 3913
Tampa, FL 33601-3913

Barnes Industrial Plastic Piping
425 Obbs Street
Tampa, FL 33619-8031

Betty & Quitman Lee
4775 Albany Ave.
Waycross, GA 31503

Betty Davis Lee, Trustees
Betty Davis Lee Rev. Living Trust
4775 Albany Ave.
Waycross, GA 31503

Betty and Quitman Lee
c/o John A. Anthony, Esquire
201 N. Franklin Street, Suite 2800
Tampa, FL 33602-5816

Betty and Quitman, Lee, Trustees of
Betty Davis Lee Revocable Living Trust
Attn: Allison C. Doucette
201 N. Franklin St., Ste 2800
Tampa, FL 33602-5816

Big & Wild Outdoors Radio SHow
780 Gerard Avenue
Seffner, FL 33584-5492

Bobby Stone
6635 Highway 32 E.
Nicholls, GA 31554-5631

Bunzl Tampa
PO Box 198940
Atlanta, GA 30384-8940

C.P. W. T. Inc.
3425 Christina Groves Lane
Lakeland, FL 33813-3969

CED Electric Supply
PO Box 30444
Tampa, FL 33630-3444

Carteret Coding, Inc.
1431 Raritan Rd.
Clark, NJ 07066-1230

Celtic Leasing Corp.
4 Park Plaza, #300
Irvine, CA 92614-8511

Centennial Bank
3015 W. Columbus Dr.
Tampa, FL 33607-2252

Centennial Bank
c/o Steven F. Thompson, Esq.
Thompson & Brooks
412 E. Madison Street, Suite 900
Tampa, FL 33602-4617

Chemstation of Florida
11210 Phillips Industrial Blvd. E
Suite 11
Jacksonville, FL 32256-3002

Cheney Bros
1 Cheney Way
West Palm Beach, FL 33404-7000

Chilton Consulting Group
PO Box 129
Rocky Face, GA 30740-0129

Chisholm
2 Bloor Street West Suite 3300
Toronto, Ontario
Canada M4W 3K3

Chris Tyler
3029 60th St. N.
Saint Petersburg, FL 33710-1754

Chris Tyler & Rick Bernaldo
c/o Chris Tyler
3029 60th St. N.
Saint Petersburg, FL 33710-1754

Chris Tyler & Rick Bernaldo
c/o Rick Bernaldo
111 Edmonton Lane
Brandon, FL 33511-6447

Cintas Corporation #074
PO Box 630910
Cincinnati, OH 45263-6525

Cintas FAS
PO Box 636525
Cincinnati, OH 45263-6525

City Meat Company
6202 N. Armenia
Tampa, FL 33604-5797

Compressed Air Systems, Inc.
9303 Stannu, Street
Tampa, FL 33619-2660

Controls & Weighing Systems
PO Box 549
Brandon, FL 33509-0549

County Sanitation
5601 Haines Rd. N.
Saint Petersburg, FL 33714-1967

Cozzini, Inc.
350 Howard Ave.
Des Plaines, IL 60018-1908

Craft Equipment Co.
1820 Massaro Blvd. #100
Tampa, FL 33619-3014

Crofton & Sons, Inc.
10250 Woodberry Rd.
Tampa, FL 33619-8008

Cryovac
26081 Network Place
Chicago, IL 60673-1260

Cryovac Sealed Air Corporation
Attn: Dio Jones
P.O. Box 464
Duncan SC 29334-0464

Curtis Packing
115 Sycamore Street
Tifton, GA 31794-9685

D. Adams Enviromental Service
P.O. Box 962
Gibsonton, FL 33534-0962

DCW Casings LLC
700 S Fulton Ave
Mount Vernon, NY 10550-5014

DS Services/Standar Coffee Div
Attn: Deborah Johnson, Bkcy Processor
6750 Discovery Blvd.
Mableton, GA 30126-4646

David Bean
318 Pamola St.
Lakeland, FL 33803-2245

Department of Labor and Security
Hartman Building Suite 307
2012 Capital Circle Southeast
Tallahassee FL 32399-6583

Department of Revenue
PO Box 6668
Tallahassee FL 32314-6668

Dewied International Inc
PO Box 200165
San Antonio, TX 78220-0165

Diamond Ice Company, The
1717 E. Busch Blvd
Tampa, FL 33612-8686

(p)PINELLAS COUNTY TAX COLLECTOR
PO BOX 4006
SEMINOLE FL 33775-4006

Diane Nelson, Pinellas County Tax Collector
attn:  Robin Ferguson, Tax Mgr
P.O. Box 4006
Seminole, FL 33775-4006

Doug Belden Tax Collector
601 E Kennedy Blvd., 14th Flr
Tampa, FL 33602-4932

Doug Belden, Hillsborough County Tax Collect
c/o Brian T. FitzGerald, Esq.
P.O. Box 1110
Tampa, Florida 33601-1110

DuWayne Crofton
914 Terra Mar
Tampa, FL 33613-2049

Duke Energy
PO Box 1004
Charlotte, NC 28201-1004

Dutch Packing Co. Inc.
c/o Paul J. Battista
100 SE 2nd Street, Suite 4400
Miami, FL 33131-2118

Dutch Packing Co., Inc.
c/o Paul J. Battista, Esq.
Mariaelena Gayo-Guitian, Esq.
Genovese Joblove & Battista, P.A.
100 SE 2nd Street, Suite 4400
Miami, Florida 33131-2118

Edict Systems, Inc.
PO Box L-3115
Columbus, OH 43260-0001

Euler Hermes North America
Insurance Company
Agent of Winpak Ltd.
800 Red Brook Boulevard
Owings Mills, MD 21117-5189

Express Label Company
PO Box 950727
Lake Mary, FL 32795-0727

Express Label Company, Inc.
Attn: Credit Dept/Rachel Nemeth
4115 Profit Ct.
New Albany, IN 47150-7225

FCS, Inc.
3813 126th Avenue N., Ste 13
Clearwater, FL 33762-4232

FPL Energy Services, Inc.
c/o Rachel Budke, Esq.
700 Universe Blvd.
Juno Beach, FL 33408-2657

Federal Express Corporation
PO Box 660481
Dallas, TX 75266-0481

Fishing Show, Inc.
11907 Timberhill Dr.
Riverview, FL 33569-5688

FleetPride
Po Box 281811
Atlanta, GA 30384-1811

Florida Boiler Sales & Service, Inc.
8501 Morning Dove Place
Wesley Chapel, FL 33544-2020

Florida Department of Revenue
5050 W. Tennessee Street
Tallahassee, FL 32399-0135

Florida Industrial Products
1602 N. 39th St.
Tampa, FL 33605-5853

Florida Industrial Products
PO Box 5137
Tampa, FL 33675-5137

Florida Lift Systems, Inc.
PO Box 904150
Charlotte, NC 28290-4150

Food Wholesalers, Inc.
701 46th St. S.
Saint Petersburg, FL 33711-1841


Ford Credit
P.O. Box 650575
Dallas, TX 75265-0575

Ford Motor Credit  Company
c/o Matt Holtsinger, Esquire
P.O. Box 800
Tampa, FL 33601-0800

Fresh Frozen Foods
P.O. Box 215
Jefferson, GA 30549-0215


G and R Business Solutions, LLC
and Howard A. Gordon
c/o Buddy D. Ford, Esquire
115 North MacDill Avenue
Tampa, FL  33609-1521

G&R Business Solutions, LLC
c/o Buddy D. Ford, PA
115 N. MacDill Ave.
Tampa, FL 33609-1521

Gary Vickers
Pro Food Sales
4845 Oak Arbor Drive
Valdosta, GA 31602-4904


Glen Bros. Meat Co., Inc.
Quarles & Brady LLP
S. Douglas Knox, Esq.
101 East Kennedy Boulevard, Suite 3400
Tampa, Florida 33602-5195

Glen Bros. Meat Co., Inc.
c/o J. Kirby McDonough
Quarles & Brady LLP
101 East Kennedy Boulevard, Suite 3400
Tampa, Florida 33602-5195

Glen Bros. Meat Co., Inc.
c/o S. Douglas Knox and J. Kirby McDonou
Quarles & Brady LLP
101 E Kennedy Blvd, Ste 3400
Tampa, Floria  33602-5195


Glenn Bros. Meat Co., Inc.
Po Box 671090
Dallas, TX 75267-1090

Glenn Bros. Meat Co., Inc.
c/o S. Douglas Knox
Quarles & Brady LLP
101 E. Kennedy Blvd. Ste. 3400
Tampa, Fl 33602-5195

Glenn Bros. meat Company, Inc.
c/o J Kirby McDonough, Esquire
101 East Kennedy Blvd., Suite 3400
Tampa, FL 33602-5195


Grainger
Dept. 810864843
PO Box 419267
Kansas City, MO 64141-6267

Green Guard
4159 Shoreline Drive
Waunakee, WI 53597

Gregg Industries, Inc.
5048 Vienna Drive
Waunakee, WI 53597-9746


Gulf Coast Thermo King
7802 U.S. Highway 301
Tampa, FL 33637-6772

H&M Bay, Inc
PO Box 418578
Boston, MA 02241-8578

HD Supply Electrical, LTD
P O Box 4975
Orlando, FL 32802-4975


HD Supply Power Solutions Ltd.
Att: David Rimpo
501 West Church Street
Orlando, FL 32805-2270

Handtmann Incorporated
28690 N. Ballard Drive
Lake Forest, IL 60045-4500

Harpak-Ulma Packaging, LLC
175 John Quincy Adams Road
Taunton, MA 02780-1035


Hennecold Storage
5024 Uceta Rd.
Tampa, FL 33619-3249

Heritage Bank of Florida
23000 State Rd 54
Lutz, FL 33549-6958

HiTech Food Equipment Inc
Accounts Receivable
818 Lively Blvd
Wood Dale, IL 60191-1202


Hillsborough County BOCC
Code Enforcement Dept.
10119 Windhorst Rd
Tampa, FL 33619-7827

Hillsborough County Tax Collector
2506 N Falkenburg Rd
Tampa, FL 33619-0917

Hitec Food Equipment, Inc.
818 Lively Blvd.
Wood Dale, IL 60191-1202

Hitec Food Equipment, Inc.
c/o Rein F. Krammer, Esq.
Masuda, Funai, Eifert & Mitchell, Ltd.
203 North LaSalle Street, Suite 2500
Chicago, IL 60601-1262

Home Depot/GECF
Dept 32 - 2502393782
P.O. Box 9055
Des Moines, IA 50368-9055

Innovative Machine, Inc.
PO Box 357393
Gainesville, FL 32635-7393


Integrated Distribution, Inc.
Po Box 347
Comstock Park, MI 49321-0347

Inter-Tech Supplies, Inc.
802 E. Fairmont St.
Allentown, PA 18109-3373

Internal Revenue Service
Centralized Insolvency Operations
P.O. Box 7346
Philadelphia, PA 19101-7346


Internal Revenue Service
P.O. Box 7346
Philadelphia, PA 19101-7346

J Van Hart
14381 Gamma Drive
Fort Myers, FL 33912-1918

JM Convenience Corp
3939 Highway 301 N
Tampa, FL 33619-1258


JM Convenience Corp.
8509 E. Martin Luther King Blvd.
Tampa, FL 33610-7303

Jerry Franks
2502 Linden Tree Street
Seffner, FL 33584-5883

Job Site Concrete Inc
4419 W. South Avenue
Tampa, FL 33614-6445


Joe's Creek Industrial Park, Ltd
c/o Karen E. Maller, Esq
Powell, Carney, Maller, P.A.
One Progress Plaza, Suite 1210
St. Petersburg, Florida 33701-4335

Joe's Creek Industrial Park, Ltd.
c/o Iurillo Law Group, P.A.
5628 Central Avenue
St. Petersburg, FL 33707-1718

Joes Creek Industrial Park
9741 International Center N.
Saint Petersburg, FL 33716-4807


John R. White Company, Inc.
PO Box 52744
Phoenix, AZ 85072-2744

KUBOTA CREDIT CORPORATION
PO BOX 9013
ADDISON,TEXAS 75001-9013

Keith A. Alter
Marcus Food Co.
240 N. Rock Rd., Ste 246
Wichita, KS 67206-2245


Kevin D. Crofton
10250 Woodberry Rd.
Tampa, FL 33619-8008

Kevin D. Crofton Business Trust
10250 Woodberry Rd.
Tampa, FL 33619-8008

Knight Refrigerated Services
Po Box 52744
Phoenix, AZ 85072-2744


Kubota Credit Corporation
Law Offices of Daniel C. Consuegra PL
9204 King Palm Drive
Tampa, FL 33619-1328

Kubota Credit Corporation
c/o Daniel C Consuegra, PL
9204 King Palm Drive
Tampa, FL  33619-1328

Kubota Credit Corporation USA
1025 N. Brook Pkwy.
Suwanee, GA 30024-2967


Kubota Credit Corporation USA
PO Box 0559
Carol Stream, IL 60132-0559

LSQ Funding Group, L.C.
2600 Lucien Way, #100
Maitland, FL 32751-7064

LSQ Funding Group, L.C.
c/o Kevin A. Reck, Esq.
Foley & Lardner LLP
111 N. Orange Avenue, Suite 1800
Orlando, Florida 32801-2386


Lee Quitman
c/o Anthony & Partners, LLC
Allison C. Doucette, Esquire
201 N. Franklin Street, Suite 2800
Tampa, Florida 33602-5816

Legal Shield
PO Box 2629
Ada, OK 74821-2629

Lexington Insurance Company
Ryan G. Foley, Authorized Representative
175 Water Street,15th Floor
New York, New York 10038-4918

M E Wilson Company Inc.
300 W. Platt Street, Ste 200
Tampa, FL 33606-2299

MPAK, Inc,
1964 Idlewild Drive
Greenville, MS 38701-7713

MacFarlane Ferguson & McMullin
P O Box 1531
Tampa, FL 33601-1531

Manning Poultry Sales
PO Box 950
Raeford, NC 28376-0950

Marcus Food Co., Inc.
Po Box 781659
Wichita, KS 67278-1659

Max-Pak LLC
Euler Hermes North America Ins. Co.
800 Red Brook Boulevard
Owings Mills, MD 21117-5173

MaxPak, Inc.
2808 New Tampa Hwy
Lakeland, FL 33815-3438

Maxpak
P.O. Box 198287
Atlanta, GA 30384-8287

McGee Tire Stores 6204
6204 E. Hillsborough Ave, MV 47385
Tampa, FL 33610-5425

MedExpress Urgent Care
PO Box 6117
Clearwater, FL  33758-6117

Michael R. Dal Lago, Esq.
Hahn Loeser & Parks LLP
800 Laurel Oak Drive, Suite 600
Naples, FL 34108-2705

Miller Bearings, Inc.
PO Box 3469
Orlando, FL 32802-3469

Motion Industries
P.O. Box 1477
Birmingham, AL  35201-1477

Motion Industries
Po Box 404130
Atlanta, GA 30384-4130

Multisource Inc
3836 Wacker Drive
Mira Loma, CA 91752-1147

Multivac
PO Box Ch 17573
Palatine, IL 60055-7573

Murphy & David's Corp.
1175 Peachtree St., N.E. Suite 2080
Atlanta, GA 30361-3551

Murphy & David's Corp.
Euler Hermes North America Inc., agent
800 Red Brook Boulevard
Owings Mills, MD 21117-5173

NAPA Auto Parts
PO Box 409043
Atlanta, GA 30384-9043

Nancy Murphy or Samuel Petit-Homme
DCW Casing, LLC
700 S. Fulton Avenue
Mount Vernon, NY 10550-5014

Neogen Corporation
25153 Network Place
Chicago, IL 60673-1251

Nesco Resources A-1 Temps, Inc.
n/k/a A1 Resourse, LLC
9202 Florida Palm Dr
Tampa, FL 33619-4352

Nickolas Manufacturing
14301 60th Street N.
Clearwater, FL 33760-2708

Ogletree, Deakins, Nash,
Smoak & Stewart
PO Box 89
Columbia, SC 29202-0089

Ogletree, Deakins, Nash,
Smoak & Stewart, P.C.
P.O. Box 167
Greenville, SC 29602-0167

Orkin Exterminating Co., Inc
3755 68th Avenue North
Pinellas Park, FL 33781-6110

Paul Kastin
Murphy & David's Corp.
1175 Peachtree Street NE
Suite 2080
Atlanta, GA 30361-3551

Peace Transport, LLC
10250 Woodberry Road
Tampa, FL 33619-8008

Penske Truck Leasing Co, L.P.
PO Box 563
Reading  PA   19603-0563

Pep Boys
PO Box 8500-50445
Philadelphia, PA 19178-0445

Principato Sausage Co.
198 Woodcrest Lane
Mulberry, FL 33860-7538

Print etc.
15430 N. Nebraska Avenue
Lutz, FL 33549-6150

Pro Food Sales Inc.
4845 Oak Arbor Drive
Valdosta, GA 31602-4904

Pyromation, Inc
23526 Network Place
Chicago, IL 60673-1235

Quick Pak, Inc.
4007 N. 56th St.
Tampa, FL 33610-7133

Quirch Foods
4300 Pleasantdale Rd., Suite Q
Atlanta, GA 30340-3504

R E Michel Co., Inc.
Po Box 2318
Baltimore, MD 21203-2318

R&D  Supplies
3245-110th Avenue N.
Largo, FL 33774

R. L. Hammette & Associates
PO Box 846
Eagle Lake, FL 33839-0846

R.E. Michel Company
6749 Baymeadow Dr.
Glen Burnie, MS 21060-6410

Red Arrow Products Co
PO Box 686177
Chicago, IL 60695-6177

Republic Services
PO Box 9001099
Louisville, KY 40290-1099

Rettig, Inc.
5955 Truman Mountain Rd.
Gainesville, GA 30506-3860

Richard Bernaldo
c/o Damien H. Prosser, Esq.
Morgan & Morgan, P.A.
20 N. Orange Avenue, Ste. 1600
Orlando, FL 32801-4624

Rick Bernaldo
111 Edmonton Lane
Brandon, FL 33511-6447

Risco USA Corp
60 Bristol Drive
South Easton, MA 02375-1193

Riteway Sales & Marketing
1225 Pleasant Hill Rd.
Lawrenceville, GA 30044-3003

Robert Reiser & Co.
725 Dedham St.
Canton, MA 02021-1450

Roberts, Seward, Speed & Co., P.A.
509 East Jackson St.
Tampa, FL 33602-4904

Rodney Clark
5117 Tari Stream Way
Brandon, FL 33511-8419

Ross Industries, Inc.
5321 Midland Road
Midland, VA 22728-2135

Rubber & Accessories
PO Box 777
Eaton Park, FL 33840-0777

SAI Global Inc
PO Box 311116
Lock Box #T66072U
Detroit, MI 48231

SAI Global Inc.
20 Carlson Court
Suite 200
Toronto, ON M9W 7K6

Safe Workplace Inc.
PO Box 2350
Brandon, FL 33509-2350

Scottpec, Inc.
15 Southgate Drive
Guelph, Ontario, Canada N1G 3M5

Sheppard Security & Comm.
6602 Causeway Blvd.
Tampa, FL 33619-6304

Sloan Sales
1 Pleasure Island Rd.
Wakefield, MA 01880-1229

Speco Inc.
3946 Willow Road
Schiller Park, IL 60176-2311

Sprint  Correspondence
Attn Bankruptcy Dept
PO Box 7949
Overland Park KS 66207-0949

Standard Coffee Services
PO Box 952748
Saint Louis, MO 63195-2748

Star Meats Orlando
901 Mercy Drive
Orlando, FL 32808-7821

Sunsource
PO Box 730698
Dallas, TX 75373-0698

Susquehanna Commercial Finance, Inc.
2 Country View Rd., #300
Malvern, PA 19355-1420

Susquehanna Commercial Finance, Inc.
c/o Eric B. Zwiebel, P.A.
7900 Peters Road
Building B, Suite 100
Plantation, Florida 33324-4045

T A Mahoney Co., Inc.
4990 E. Adamo Drive
Tampa, FL 33605-5920

TOYOTA MOTOR CREDIT CORPORATION,
c/o Weltman, Weinberg & Reis
323 W. Lakeside Avenue, Ste 200
Cleveland, OH 44113-1009

Tampa Bay Breakers & Control
3795 Alt 09 N.
Palm Harbor, FL 34683

Tampa Truck Center
7528 N. US Hwy 301
Tampa, FL 33637-6769

The Diamond Ice Company
1717 E. Busch Blvd.
Suite 407
Tampa, FL 33612-8686

The Official Committee of Unsecured Creditor
for Crofton & Sons, Inc.
c/o Michael R. Del Lago Esq.
800 Laurel Oak Dr., Suite 600
Naples, FL 34108-2705

Timber Lake Foods, Inc.
PO Box 3101
Tupelo, MS 38803-3101

Toll-by-Plate
PO Box 105477
Atlanta, GA 30348-5477

Total Quality Logistic
PO Box 634558
Cincinnati, OH 45263-4558

Total Quality Logistics
1701 Edison Drive
Milford, Ohio 45150-2728

Toyota Financial Services
Commerical Finance Dept. 2431
Carol Stream, IL 60132-2431

Toyota Motor Credit Corporation
P.O. Box 3457
Torrance, CA 90510-3457

Toyota Motor Credit Corporation
c/o Scott D. Fink, Esq.
323 W. Lakeside Avenue, Suite 200
Cleveland, OH  44113-1099

Trans-Market Sales & Equipment
PO Box 16651
Tampa, FL 33687-6651

Tri-Venture Food Brokers, Inc.
2525 Drane Field Rd., Suite 1
Lakeland, FL 33811-1360

Twiss Transport, Inc.
P.O. Box 1122
Largo, FL 33779-1122

UJP Consignments, LLC
10250 E. Jackson St.
Tampa, FL 33602

UJP Consignments, LLC
c/o Alberto F. Gomez, Jr., Esq.
403 E. Madison Street, Ste. 400
Tampa, FL 33602-4614

ULine
Accounts Receivable
PO Box 88741
Chicago, IL 60680-1741

US Bank
Cust for PFS Financial 1, LLC
7990 IH-10 W, Suite 200
San Antonio, TX 78230-4786

USDA - Food Safety & Inspection Svc
US Bank - FSIS Lockbox
PO Box 979001
Saint Louis, MO 63197-9001

USDA/Food Safety and Inspection Svc
Attn: Debt Management
5601 Synnyside Ave., Mail Drop 5264
Beltsville, MD 20705-5000

United Food Group, LLC
266 Flanders F
Delray Beach, FL 33484-5305

United Parcel Service
P.O, Box 7247-0244
Philadelphia, PA 19170-0001

Villari Food Group, LLC
P.O. Box 485
Warsaw, NC 28398-0485

Viscofan USA, Inc.
PO Box 830469
Birmingham, AL 35283-0469

Volk Corporation
23936 Industrial Park Drive
Farmington, MI 48335-2877

W W Grainger Inc.
Attn: Special Collections Dept
MEs17810864843
7300 N. Melvina
Niles, IL 60714-3906

Ware County Codes & Planning Dept.
902 Grove Ave.
Waycross, GA 31501-4514

Ware County Tax Commissioner
800 Church St., #133
Waycross, GA 31501-3594

Ware MR Service Center
3201 Harris Rd.
Waycross, GA 31503-8956

Wells Fargo Equipment Finance, Inc.
733 Marquette Ave., #300
Minneapolis, MN 55402-2319

Whitewater Processing Co
10964 Campbell Rd.
Harrison, OH 45030-8906

Wilkinson Foods International Ltd.
2333 North Sheridan Way
Mississauga, On  L5K1A7

Williams Food MAchinery, Inc.
5443 West Crenshaw
Tampa, FL 33634-3095

Windstream Communications
c/o Ralph Tector, Sr. Account Executive
The Leviton Law Firm
3 Golf Center, Suite 361
Hoffman Estates, IL 60169-4910

Winpak
1951 Paysphere Circle
Chicago, IL 60674-0019

Wolf-tec, Inc.
PO Box 95000
Philadelphia, PA 19195-4420

Xpedx - Tampa
PO Box 677319
Dallas, TX 75267-7319

Zep Manufacturing Co.
Specialty Products Grp
PO Box 404628
Atlanta, GA 30384-4628

Paul J Battista +
Genovese Joblove & Battista PA
100 Southeast 2nd Street
44th Floor
Miami, FL 33131-2100

Jason B. Burnett +
GrayRobinson, P.A.
50 N. Laura Street, Suite 1100
Jacksonville, FL 32202-3611

Kenneth B Jacobs +
GrayRobinson, P.A.
50 North Laura Street, Suite 1100
Jacksonville, FL 32202-3611

Buddy D. Ford +
115 N. MacDill Avenue
Tampa, FL 33609-1521

Alberto F Gomez Jr.+
Johnson Pope Bokor Ruppel & Burns, LLP
403 East Madison Street, Suite 400
Tampa, FL 33602-4614

Theodore J. Hamilton +
Wetherington, Hamilton, Harrison & Fair
1010 N. Florida Ave.
Tampa, FL 33602-3808

Karen E. Maller +
Powell Carney Maller Ramsay & Grove, P.A
One Progress Plaza, Suite 1210
St. Petersburg, FL 33701-4335

Scott A. Stichter +
Stichter, Riedel, Blain & Prosser
110 E. Madison Street, Suite 200
Tampa, FL 33602-4718

Steven F Thompson +
Thompson & Brooks
412 East Madison Street, Suite 900
Tampa, FL 33602-4617

United States Trustee - TPA +
Timberlake Annex, Suite 1200
501 E Polk Street
Tampa, FL 33602-3949

Chad S Bowen +
Jennis & Bowen PL
400 North Ashley Drive
Suite 2540
Tampa, FL 33602-4317

Brian T FitzGerald +
Hillsborough County Attorney
Senior Assistant County Attorney
PO Box 1110
Tampa, FL 33601-1110

Geoffrey J Peters +
Weltman Weinberg & Reis Co LPA
175 South Third Street
Suite 900
Columbus, OH 43215-5166

Kevin A Reck +
Foley & Lardner
111 North Orange Avenue
Suite 1800
Orlando, FL 32801-2386

Andrew T. Jenkins +
Bush Ross, PA
Post Office Box 3913
Tampa, FL 33601-3913

Amy Denton Harris +
Stichter Riedel Blain & Prosser PA
110 E Madison Street
Suite 200
Tampa, FL 33602-4718

Adam L Alpert +
Bush Ross P.A.
Post Office Box 3913
Tampa, FL 33601-3913

John A Anthony +
Anthony & Partners, LLC
201 North Franklin Street, Suite 2800
Tampa, FL 33602-5816

Eric B Zwiebel +
Eric B Zwiebel, P.A.
Executive Court at Jacoranda
7900 Peters Road, Building B, Suite 100
Plantation, FL 33324-4044

Camille J Iurillo +
Iurillow Law Group, P.A.
5628 Central Avenue
St. Petersburg, FL 33707-1718

Damien H. Prosser +
20 N. Orange Avenue
10th Floor
Orlando, FL 32801-4624

Stephanie C Lieb +
Trenam, Kemker
Post Office Box 1102
Tampa, FL 33601-1102

John W Landkammer +
Anthony & Partners, LLC
201 N. Franklin Street, Suite 2800
Tampa, FL 33602-5816

S Douglas Knox +
Quarles & Brady, LLP
101 E. Kennedy Boulevard, Suite 3400
Tampa, FL 33602-5195

J Steven Wilkes +
Office of United States Trustee
501 East Polk Street
Tampa, FL 33602-3949

Becky Ferrell-Anton +
Stichter Reidel Blain & Prosser PA
110 E Madison Street, Ste 200
Tampa, FL 33602-4718

William C Falkner +
Pinellas County Attorney's Office
315 Court Street, Sixth Floor
Clearwater, FL 33756-5165

John Paul Getting +
Jennis & Bowen, P.L.
400 North Ashley Drive
Suite 2540
Tampa, FL 33602-4317

Daniel A DeMarco +
Hahn Loeser & Parks, LLP
200 Public Square
Suite 2800
Cleveland, OH 44114-2303

Nicole Mariani Noel +
Kass, Shuler, Solomon, Spector, etal
PO Box 800
Tampa, FL 33601-0800

Allison Doucette +
Anthony & Partners LLC
201 North Franklin Street
Suite 2800
Tampa, FL 33602-5816

Matthew M Holtsinger +
Kass Shuler PA
PO Box 800
Tampa, FL 33601-0800

Robert A Cooper +
Hahn Loeser & Parks, LLP
2532 East First Street
Fort Myers, FL 33901-2431

Dessa Willson +
Daniel C. Consuegra, P.L.
9204 King Palm Drive
Tampa, FL 33619-1328

Pinellas County Tax Collector (NF) +
P.O. Box 4006
Seminole, FL 33775-4006

James K McDonough +
Quarles & Brady, LLP
101 E Kennedy Blvd, Ste 3400
Tampa, FL 33602-5195

The preferred mailing address (p) above has been substituted for the following entity/entities as so specified
by said entity/entities in a Notice of Address filed pursuant to 11 U.S.C. 342(f) and Fed.R.Bank.P. 2002 (g)(4).

Bank of America, N.A.
4161 Piedmont Pkwy.
Greensboro, NC 27410-8110

Diane Nelson, Pinellas County Tax Collector
Attn: William C. Falkner
315 Court Street, 6th Floor
Clearwater, FL  33756

(d)Pinellas County Tax Collector
%William C. Falkner, Esq.
315 Court St., Sixth Floor
Clearwater, FL 33756

The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.

(u)All Steel Buildings

(u)Bank of America, N.A.

(u)Richard Bernaldo

(u)Dutch Packing Co., Inc.

(u)TOYOTA MOTOR CREDIT CORPORATION
c/o Weltman, Weinberg & Reis

(u)The Official Committee of Unsecured Credit

(d)Celtic Commercial Finance
c/o Stephanie C. Lieb, Esq.
Trenam Kemker
P.O. Box 1102
Tampa, FL 33601-1102

(d)Centennial Bank
c/o Steven F. Thompson, Esq.
Thompson and Brooks
412 E. Madison Street, Suite 900
Tampa, FL 33602-4617

(d)Department of Labor and Security
Hartman Building Suite 307
2012 Capital Circle Southeast
Tallahassee FL 32399 0648

(d)Ford Motor Credit Company, LLC
c/o Matt Holtsinger
P.O. Box 800
Tampa, FL 33601-0800

(d)Internal Revenue Service
PO Box 7346
Philadelphia, PA  19101-7346

(d)Kubota Credit Corporation
PO Box 9013
Addison, Texas 75001-9013

(d)Pinellas County Tax Collector
P.O. Box 4006
Seminole, FL 33775-4006

(d)Pinellas County Tax Collector
PO Box 4006
Seminole, FL 33775-4006

(d)UJP Consignments, LLC
c/o Jennis & Bowen PL
400 N. Ashley Dr., Ste. 2540
Tampa, FL 33602-4317

(d)Wells Fargo Equipment Finance, Inc.
c/o Kenneth B. Jacobs, Esq.
GrayRobinson, P.A.
50 North Laura Street, Suite 1100
Jacksonville, FL 32202-3611

End of Label Matrix
Mailable recipients   320
Bypassed recipients    16
Total                 336

Label Matrix for local noticing
113A-8
Case 8:14-bk-05033-CPM
Middle District of Florida
Tampa
Thu Apr  2 16:10:16 EDT 2015

Bank of America, N.A.
c/o Bush Ross, P.A.
Attn: Adam Lawton Alpert, Esq.
Post Office Box 3913
Tampa, FL 33601-3913

Crofton L & D Meats Holdings, LLC
Crofton & Sons, Inc.
8:14-bk-4208-CPM (Jointly Administered)
10250 Woodberry Rd.
Tampa, FL 33619-8008

G&R business Solutions, LLC
c/o Howard A. Gordon, Managing Member
509 E. Jackson St.
Tampa, FL 33602-4904

ACC Distributions, Inc.
P.O. Box 439
Leesburg, GA 31763-0439

Bank of America
attn:  Adam Lawton Alpert, Esq.
PO Box 3913
Tampa, FL 33601-3913

Bank of America
c/o Adam Lawton Alpert, Esq
P.O. Box 3913
Tampa, Fl 33601-3913

(p)BANK OF AMERICA
PO BOX 982238
EL PASO TX 79998-2238

Bank of America, N.A.
c/o Andrew T. Jenkins, Esq.
Bush Ross, P.A.
P.O. Box 3913
Tampa, FL 33601-3913

BellSouth Telecommunications Inc
c/o AT&T Services Inc
Karen A Cavagnaro
One AT&T Way Room 3A104
Bedminster NJ 07921-2693

Betty & Quitman Lee
4775 Albany Ave.
Waycross, GA 31503

Betty & Quitman Lee, Trustees
Betty Davis Lee Rev. Living Trust
4775 Albany Ave.
Waycross, GA 31503

Bobby Stone
6635 Highway 32 E.
Nicholls, GA 31554-5631

Chris Tyler
3029 60th St. N.
Saint Petersburg, FL 33710-1754

Chris Tyler & Rick Bernaldo
c/o Chris Tyler
3029 60th St. N.
Saint Petersburg, FL 33710-1754

Chris Tyler & Rick Bernaldo
c/o Rick Bernaldo
111 Edmonton Lane
Brandon, FL 33511-6447

Crofton & Sons, Inc.
10250 Woodberry Rd.
Tampa, FL 33619-8008

David Bean
318 Pamola St.
Lakeland, FL 33803-2245

David F Bean
c/o GrayRobinson PA, Maureen Vitucci
301 E Pine Street Suite 1400
Orlando FL 32801-2741

Department of Labor and Security
Hartman Building Suite 307
2012 Capital Circle Southeast
Tallahassee FL 32399 0648

Department of Revenue
PO Box 6668
Tallahassee FL 32314-6668

Dutch Packing Co. Inc.
c/o Paul J. Battista
100 SE 2nd Street, Suite 4400
Miami, FL 33131-2118

Dutch Packing Co., Inc.
c/o Paul J. Battista, Esq.
Mariaelena Gayo-Guitian, Esq.
Genovese Joblove & Battista, P.A.
100 SE 2nd Street, Suite 4400
Miami, Florida 33131-2118

Fresh Frozen Foods
P.O. Box 215
Jefferson, GA 30549-0215

G and R Business Solutions, LLC
Howard A. Gordon
c/o Buddy D. Ford, Esquire
115 North MacDill Avenue
Tampa, FL  33609-1521

G&R Business Solutions, LLC
and Howard A. Gordon
c/o Buddy D. Ford, PA
115 N. MacDill Ave.
Tampa, FL 33609-1521

Internal Revenue Service
Centralized Insolvency Operations
P.O. Box 7346
Philadelphia, PA 19101-7346

Internal Revenue Service
P.O. Box 7346
Philadelphia, PA 19101-7346

LSQ Funding Group, L.C.
2600 Lucien Way, #100
Maitland, FL 32751-7064

Maxpak
P.O. Box 198287
Atlanta, GA 30384-8287

Michael R. Dal Lago, Esq.
Hahn Loeser & Parks LLP
800 Laurel Oak Drive, Suite 600
Naples, FL 34108-2705

Quirch Foods
4300 Pleasantdale Rd., Suite Q
Atlanta, GA 30340-3504

Rick Bernaldo
111 Edmonton Lane
Brandon, FL 33511-6447

Rodney Clark
1413 Hurley Pond Lane
Valrico, FL 33596-5673

Villari Food Group, LLC
P.O. Box 485
Warsaw, NC 28398-0485

Ware County Codes & Planning Dept.
902 Grove Ave.
Waycross, GA 31501-4514

Ware County Tax Commissioner
800 Church St., #133
Waycross, GA 31501-3594

Ware MR Service Center
3201 Harris Rd.
Waycross, GA 31503-8956

Paul J Battista +
Genovese Joblove & Battista PA
100 Southeast 2nd Street
44th Floor
Miami, FL 33131-2100

Buddy D. Ford +
115 N. MacDill Avenue
Tampa, FL 33609-1521

Scott A. Stichter +
Stichter, Riedel, Blain & Prosser
110 E. Madison Street, Suite 200
Tampa, FL 33602-4718

United States Trustee - TPA +
Timberlake Annex, Suite 1200
501 E Polk Street
Tampa, FL 33602-3949

Amy Denton Harris +
Stichter Riedel Blain & Prosser PA
110 E Madison Street
Suite 200
Tampa, FL 33602-4718

Adam L Alpert +
Bush Ross P.A.
Post Office Box 3913
Tampa, FL 33601-3913

J Steven Wilkes +
Office of United States Trustee
501 East Polk Street
Tampa, FL 33602-3949

Robert A Cooper +
Hahn Loeser & Parks, LLP
2532 East First Street
Fort Myers, FL 33901-2431

The preferred mailing address (p) above has been substituted for the following entity/entities as so specified
by said entity/entities in a Notice of Address filed pursuant to 11 U.S.C. 342(f) and Fed.R.Bank.P. 2002 (g)(4).

Bank of America, N.A.
4161 Piedmont Pkwy.
Greensboro, NC 27410-8110

The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.

(u)AT&T

(u)Dutch Packing Co. Inc.

(u)Official Committee of Unsecured Creditors

(d)Bank of America, N.A.
c/o Bush Ross, P.A.
Attn: Adam Lawton Alpert, Esq.
PO Box 3913
Tampa, FL 33601-3913

End of Label Matrix
Mailable recipients    45
Bypassed recipients     4
Total                  49

## PURCHASE AND SALE AGREEMENT

### BY AND AMONG

### COLORADO BOXED BEEF COMPANY and ABE'S FINEST MEATS, LLC

### AND

### CROFTON & SONS, INC. and CROFTON L&D MEATS HOLDINGS, LLC

**Dated as of March 16, 2015**

7360823.1

ARTICLE I PURCHASE AND SALE OF ASSETS ...................................................................1
    1.1        Acquired Assets ...................................................................................1
    1.2        Excluded Assets ...................................................................................3
    1.3        Assumed Liabilities ............................................................................4
    1.4        Excluded Liabilities ............................................................................5
    1.5        Instruments of Transfer ......................................................................5
    1.6        Payment of Taxes................................................................................5

ARTICLE II CONSIDERATION AND MANNER OF PAYMENT ..........................................5
    2.1        Payment...............................................................................................5
    2.2        Earn-Out..............................................................................................6
    2.3        Closing ................................................................................................8
    2.4        Proration.............................................................................................8
    2.5        Allocation of Purchase Price...............................................................8

ARTICLE III REPRESENTATIONS AND WARRANTIES OF THE CROFTON
                COMPANIES ...........................................................................................9
    3.1        Organization and Qualification............................................................9
    3.2        Authorization; Enforceability .............................................................9
    3.3        Litigation.............................................................................................9
    3.4        Brokers................................................................................................9

ARTICLE IV REPRESENTATIONS AND WARRANTIES OF THE BUYER.......................9
    4.1        Organization and Qualification............................................................9
    4.2        Authorization; Enforceability .............................................................9
    4.3        No Consents ......................................................................................10
    4.4        Litigation...........................................................................................10
    4.5        Brokers..............................................................................................10
    4.6        Financial Condition...........................................................................10

ARTICLE V COVENANTS OF THE CROFTON COMPANIES .........................................10
    5.1        Conduct of Business ..........................................................................10
    5.2        Access and Information .....................................................................11
    5.3        Bankruptcy Sale Procedures .............................................................11
    5.4        Cure of Defaults................................................................................11

ARTICLE VI COVENANTS OF THE BUYER......................................................................11
    6.1        Efforts to Consummate .....................................................................11
    6.2        Press Releases and Public Disclosure................................................11
    6.3        Confidential Information ...................................................................11
    6.4        Further Assurances.............................................................................12

ARTICLE VII CONDITIONS PRECEDENT TO THE CLOSING ......................................12
    7.1        Conditions Precedent to Obligations of the Buyer ...........................12
    7.2        Conditions Precedent to Obligations of the Crofton
                Companies »........................................................................................12

7360823.1

i

ARTICLE VIII CLOSING ......................................................................................................12
    8.1        Time and Place.......................................................................................................12
    8.2        Deliveries by the Crofton Companies.....................................................................12
    8.3        Deliveries by the Buyer .........................................................................................13

ARTICLE IX TERMINATION..............................................................................................13
    9.1        Termination Events................................................................................................13
    9.2        Sale to Other Purchaser.........................................................................................14
    9.3        Buyer's Breach......................................................................................................14
    9.4        Other than Buyer's Breach.....................................................................................14

ARTICLE X OTHER COVENANTS OF THE PARTIES .....................................................14
    10.1      Employment...........................................................................................................14
    10.2      Employee Benefits .................................................................................................15
    10.3      Tax Matters ...........................................................................................................15
    10.4      Postpetition Obligations.........................................................................................15

ARTICLE XI MISCELLANEOUS ........................................................................................15
    11.1      Notices, Consents, etc ...........................................................................................15
    11.2      Severability ...........................................................................................................16
    11.3      Successors; Assignment..........................................................................................16
    11.4      Counterparts; Facsimile or Electronic Signatures...................................................17
    11.5      Expenses ...............................................................................................................17
    11.6      Table of Contents and Headings ............................................................................17
    11.7      Definitions.............................................................................................................17
    11.8      Entire Agreement ..................................................................................................22
    11.9      Third Parties..........................................................................................................22
    11.10     Interpretive Matters...............................................................................................22
    11.11     Choice of Law; Jurisdiction ..................................................................................22

Exhibit A

## PURCHASE AND SALE AGREEMENT

**THIS PURCHASE AND SALE AGREEMENT** (this "**Agreement**") is made and entered into as of March 16, 2015, by and among (i) Crofton & Sons, Inc., a Florida corporation, ("**C&S**") and (ii) Crofton L&D Meats Holdings, LLC, a Florida limited liability company ("**L&D**" and each an "**Crofton Company**" and collectively, the "**Crofton Companies**") and (iii) Colorado Boxed Beef Company, a Florida corporation ("**Colorado**") and (iv) Abe's Finest Meats, LLC, an affiliated assignee of Colorado ("**Buyer**" and collectively with Colorado, the "**Buyer Companies**")).  Each of the Crofton Companies and the Buyer Companies is a "**Party**" and collectively they are the "**Parties**" to this Agreement.  Capitalized terms used, but not otherwise defined, herein shall have the meanings set forth in **Section 11.7**.

## RECITALS

A.      The Crofton Companies presently conduct a smoked meat and sausage processing business (the "**Business**").

B.      On April 16, 2014 and May 1, 2014, respectively, each of the Crofton Companies filed a voluntary petition for relief under Title 11 of the United States Bankruptcy Code (the "**Bankruptcy Code**") commencing a bankruptcy proceeding in the United States Bankruptcy Court for the Middle District of Florida (the "**Bankruptcy Court**"), which cases are being jointly administered under Case No. 9-14-bk-4208-CPM (collectively, the "**Bankruptcy Case**").

C.      Each of the Crofton Companies desires to sell, transfer and assign to the Buyer and Colorado and the Buyer desire that the Buyer purchases, acquires and assumes from each of the Crofton Companies, all of the Acquired Assets and Assumed Liabilities used in connection with the Business as presently conducted and operates such business, all on the terms and conditions provided herein and in accordance with Sections 105, 363 and 365 of the Bankruptcy Code.

## AGREEMENT

In consideration of the foregoing and the respective representations, warranties, covenants and agreements set forth herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties hereby agree as follows:

## ARTICLE I
## PURCHASE AND SALE OF ASSETS

1.1      <u>Acquired Assets</u>.  Upon the terms and subject to the conditions of this Agreement, at the Closing and effective at the Closing Date, each of the Crofton Companies shall sell, convey, transfer, assign and deliver to the Buyer, and the Buyer shall purchase, receive and accept from the Crofton Companies, **AS-IS, WHERE-IS** free and clear of all Liens, all of the Acquired Assets.  "**Acquired Assets**" shall have the meaning of all of each of the Crofton Companies' right, title and interest in the properties, assets and rights used or useful in connection with the Business (except for the Excluded Assets), wherever located, whether tangible or intangible, real, personal or mixed, as the same shall exist at the Closing. The

Acquired Assets shall include, but shall not be limited to, all of each Crofton Companies' right, title and interest in and to the assets described in the following clauses (but shall specifically exclude the Excluded Assets):

        (a)     All real property and all improvements including, but not limited to, any and all furniture, fixtures, display items and accessories, located at 10250 Woodberry Rd., Tampa, Florida (the "Tampa Property"); and all real property and all improvements including, but not limited to, any and all furniture, fixtures, display items and accessories, located at 4794 Albany Hwy, Waycross, GA 31503 (the "Waycross Property"), (collectively with the Tampa Property, the "Facilities");

        (b)     All Crofton Companies' rights, title and interests under any USDA licenses.

        (c)     All Crofton Companies' Intellectual Property, including know-how, copyrights, patents, trademarks, trade names and domain names (including all rights, title and interest in all Crofton registered trademarks, and trade names including Uncle John's Pride, Southern Pride, Bean Brothers Sausage, Lee & Davis, Peppino's and all other related brands and derivatives thereof) and all rights of each of the Crofton Companies under any license agreements and including software license agreements.

        (d)     All Crofton Companies' inventory on the day immediately preceding the date of Closing.

        (e)     All Crofton Companies' customer lists.

        (f)     All Crofton Companies' vehicles, machinery and equipment (including but not limited to trucks, tractor/trailers and vehicles; parts and spare parts; computers, computer equipment, computer hardware/software (including but not limited to any data and software stored on any computer hardware); copiers, security systems, operating manuals, office furniture and fixtures, tools, supplies, and other tangible personal property, wherever located, including but not limited to those located at the Facilities (**"Equipment"**). The Equipment shall include, but not be limited to, all items set forth on Schedule 1.1(f), attached hereto.

        (g)     All other tangible or intangible personal property owned by Crofton Companies.

        (h)     All telephone numbers, domain names, websites and webpages, related to the Crofton Companies.

        (i)     All rights under or pursuant to all warranties (express or implied), representations and guarantees made by third parties relating to any Acquired Assets, to the extent such warranties, representations and guarantees do not extend to or cover Excluded Liabilities.

        (j)     To the extent transferable under Section 365 of the Bankruptcy Code or with the Consent of any third-party, if necessary and obtained, all Licenses and Permits, certifications and approvals from all permitting, licensing, accrediting and certifying

agencies, and the rights to all data and records held by such permitting, licensing and certifying agencies.

(k)    All goodwill of the Business as a going concern and all other intangible properties of the Business.

(l)    All documents consisting of purchasing and sales records, accounting records, business plans, budgets, cost and pricing information, correspondence, prospective client information, customer and vendor lists and data and other records and files, wherever located (including, without limitation, any such records maintained in connection with any computer system) related to the Business, other than those documents that are Excluded Assets, provided, however, that the Buyer shall preserve, and provide the Estate Representative (as defined in Section 2.2(a) herein) access during regular business hours to, all books and records of the Crofton Companies during the Earn-Out Period (as defined in Section 2.2(a) herein).

(m)    All rights and interests in leases and executory contracts designated by Buyer for assumption by Buyer at its sole cost (the "**Assumed Contracts**").

1.2    Excluded Assets. Notwithstanding anything contained in **Section 1.1**, the Crofton Companies are not selling, conveying, transferring or assigning, and the Buyer is not purchasing, receiving or accepting, any of the assets, rights or properties expressly set forth below (such assets being referred to as the "**Excluded Assets**"). The Crofton Companies shall retain all right, title and interest to and in the Excluded Assets.

(a)    Any and all rights under all Contracts that are not Assumed Contracts.

(b)    Any (i) payments, prepayments, retainers, deposits or similar assets related to professional advisors to the Crofton Companies or their estates, (ii) cash and cash equivalents, including the Purchase Price, (iii) certificates of deposit, commercial paper and securities owned, used or held for use by the Crofton Companies, (iv) letters of credit, (v) prepaid employee leasing charges, payroll and withholding Taxes, (vi) deferred income Taxes, (vii) all prepetition security, vendor, utility and other similar deposits, prepaid expenses or other prepayments.

(c)    All accounts receivable and all rights under contracts used or useful in connection with the Business (including, without limitation, executory contracts which would be assumed by the Crofton Companies and assigned to the Buyer).

(d)    Solely to the extent designated by the Crofton Companies, any (i) confidential personnel and medical records pertaining to any Employee who is not hired by the Buyer (which records also may be designated by any employee or former employee); (ii) books and records that the Crofton Companies are required by Law to retain; provided, that the Buyer shall have the right to make copies of any portions of such retained books and records that relate to the Business or any of the Acquired Assets, and (iii) minute books, stock ledgers and stock certificates of the Crofton Companies.

7360823.1

(e)     All rights (i) under the Crofton Companies' insurance policies relating to the Business (including, without limitation, health insurance, worker's compensation insurance and life insurance), and any right to refunds due with respect to such insurance policies and (ii) under or pursuant to all warranties (express or implied), representations and guarantees made by third parties relating to any Excluded Assets.

(f)     Any claim, right or interest of the Crofton Companies in or to any refund, rebate, abatement or other recovery for Taxes, together with any interest due thereon or penalty rebate arising therefrom, for any Tax period (or portion thereof) ending on or before the Closing Date.

(g)     All Employee Plans including the Crofton Companies' rights, title and interests in any (i) assets related to a defined benefit or defined contribution retirement plan, and (ii) assets related to non-qualified deferred compensation plan (except to the extent related to liabilities of such Employee Plans that are agreed to be assumed by the Buyer).

(h)     All rights, claims or causes of action of the Crofton Companies, as applicable, against third parties relating to Acquired Assets, properties, business or operations of the Crofton Companies, as applicable, arising out of events occurring on or prior to the Closing Date (other than any of the foregoing that relate to any liabilities or obligations assumed by the Buyer), including, without limitation, warranty rights, indemnification rights, offsets and similar rights and all avoidance claims and causes of action under non-Bankruptcy law and under Sections 510, 541, 544, 546, 547, 548, 549, 550, 551, 552 and 553 – 562 of the Bankruptcy Code or the proceeds thereof.

1.3     <u>Assumed Liabilities</u>.   Upon the terms and subject to the conditions of this Agreement, at the Closing and effective at the Closing Date, the Crofton Companies shall assign to the Buyer and the Buyer shall assume from the Crofton Companies and shall perform and discharge in accordance with their respective terms, all of the Assumed Liabilities.  The Buyer shall assume no liabilities of any of the Crofton Companies except as set forth in this **Section 1.3**.  "**Assumed Liabilities**" shall mean all of the Crofton Companies' obligations for the liabilities set forth below.

(a)     All liabilities under the Assumed Contracts, including post-Closing warranty and service obligations;

(b)     All other liabilities arising out of, or with respect to, the Acquired Assets arising after the Closing;

(c)     All post-petition, ordinary course, related, trade payables in excess of $70,000, and those other liabilities and obligations, but expressly excluding any liability relating to the services performed by any professional in connection with the Bankruptcy;

(d)     All liabilities arising for accrued vacation pay, if any, of Transferred Employees as of the Closing Date; and

4

7360823.1

(e)    All liabilities arising out of, or with respect to, the operation of the Business by the Buyer or the Transferred Employees arising after the Closing.

1.4    Excluded Liabilities.    Except as expressly set forth in **Section 1.3** of this Agreement, the Buyer shall not assume, and shall not be obligated to satisfy or perform, any liability or obligation of the Crofton Companies.

1.5    Instruments of Transfer.    The sale of the Acquired Assets and the assumption of the Assumed Liabilities as herein provided shall be effected at Closing by:

(a)    one or more assignment and assumption agreements ("**Assignment and Assumption Agreements**") in the forms attached hereto as **Exhibit A**;

(b)    one or more quitclaim deeds with respect to Owned Property ("**Deeds**") purchased pursuant to this Agreement in the forms attached hereto as **Exhibit B**;

(c)    one of more bills of sale ("**Bills of Sale**") in the forms attached hereto as **Exhibit C**;

(d)    one or more assignment of trademarks agreement(s) ("**Assignment of Trademarks**"), in the form attached hereto as **Exhibit D**; and

(e)    such other instruments of sale, transfer, conveyance and assignment as the Parties may agree.

1.6    Payment of Taxes.    The Crofton Companies covenant and agree to seek exemptions under Section 1146 of the Bankruptcy Code in respect of any and all sales, use or other transfer Taxes payable by reason of the transfer and conveyance of the Acquired Assets hereunder. The Parties will prepare and deliver and if necessary file at or before Closing all transfer Tax returns and other filings necessary to vest in the Buyer full right, title and interest in the Acquired Assets.

## ARTICLE II
## CONSIDERATION AND MANNER OF PAYMENT

2.1    Payment.    The Buyer is responsible for the obligations in this Article II, which, as with every other obligation of Buyer under this Agreement, for good and adequate consideration received, the adequacy and sufficiency of which are hereby acknowledged, are hereby absolutely and unconditionally guaranteed by Colorado with full recourse.

(a)    Consideration.    The aggregate consideration for the Acquired Assets (the "**Purchase Price**") shall consist of the sum of (a) $4,400,000 in cash payable at or before the Closing (the "**Cash Component**") plus (b) the assumption of the Assumed Liabilities (the "**Assumed Obligations**") plus (c) the Earn-out described in Section 2.2 below (the "**Earn-out**"). On the Closing Date, the Buyer shall pay the Cash Component or any balance thereof, by wire transfer of immediately available funds to the Client Trust

7360823.1

Account of Stichter, Riedel, Blain & Prosser, P.A., less the Deposit (as specified in Section 2.1(b) below).

      (b)    <u>Purchase Price Deposit</u>.  Buyer shall deposit with Stichter, Riedel, Blain & Prosser, P.A., $200,000 by wire transfer of immediately available funds within one business day of the execution of this Agreement.

    2.2    <u>Earn-Out</u>.  Commencing in 2016, and continuing through and including 2020 (the **"Earn-out Period"**), on or before the last day of the month following the month of the anniversary of the Closing (the **"Earn-out Payment Date"**), the Buyer Companies shall pay to the Crofton Companies, or any successor under a chapter 11 plan or otherwise (the **"Estate Representative"**), an amount (each, an **"Earn-out Payment"**) equal to the following percentages of pre-tax net income for the twelve (12) months preceding the month prior to the month of the Earn-out Payment Date (the **"Annual Period"**) derived by the Buyer or any successor from the continuation of the Business, the sale of Crofton products, Crofton-branded products and/or sales made from or processed at the Facilities calculated in accordance with the stipulations in Section 2.2(b) ("**Net Income**"):

| Net Income for Preceding 12 Months | | Percentage | Incremental Earn-out at Maximum of Range | Cumulative Earn-out at Maximum of Range |
|---|---|---|---|---|
| Greater Than | Equal to or Less Than | | | |
| $ 0 | $ 500,000 | 0.0% | 0.00 | 0.00 |
| $ 500,000 | $ 750,000 | 10.0% | $ 25,000.00 | $ 25,000.00 |
| $ 750,000 | $1,000,000 | 12.5% | $ 31,250.00 | $ 56,250.00 |
| $1,000,000 | $1,250,000 | 25.0% | $ 62,500.00 | $118,750.00 |
| Greater than $1,250,000 | | 30.0% | * | * |

\* All Net Income earned over $1,250,000 generates an Earn-out at 30.0%.

      (b)    For purposes of calculating Net Income as defined in Section 2.2(a):

        (i)    Net Income shall not include the Earn-out or charges related thereto.

        (ii)    Buyer shall be the sole operating entity with respect to the continuation of the Business and Buyer shall take no action contrary to maximizing the Earn-out;

        (iii)    Colorado shall not charge Buyer any mark-up on inventory purchases, but may be compensated by Buyer for its actual and reasonable services ("**Service Charges**") solely at an aggregate rate not to exceed $0.02 per pound on product purchased and paid for Colorado, other than related to Dutch Packing.  Service Charges, pounds and prices shall be accounted for as a separate line item in a report from Buyer to the Estate Representative not less than once each calendar quarter;

7360823.1

(iv)    All management fees and related charges ("**Management Fees**") to Buyer, by Colorado or any affiliate of Buyer or Colorado, in the aggregate shall not exceed $140,000 annually;

(v)    All interest and related charges ("**Interest**") to Buyer, by Colorado or any affiliate of Buyer or Colorado or otherwise, in the aggregate shall not exceed 4% per annum of the average month-end balances of accounts receivable, inventory and on the loans secured by the real estate and equipment as reflected the 2015 Budget (as defined below) having initial loan balances in the amount of $2,000,000 and $1,000,000, respectively.

(vi)    Colorado absolutely and unconditionally guarantees the performance and payment of the Earn-out;

(vii)    Capital expenditures shall not exceed the Cap Ex Budget (as defined below) by $50,000 annually unless approved in advance by the Estate Representative, which shall exercise reasonable business judgment in considering such requests; and

(viii)    Buyer shall provide the Estate Representative no later than thirty (30) days prior to the commencement of each Annual Period its forecast of its annual balance sheet and profit/loss statement, including a detailed capital expenditure budget ("**Cap Ex Budget**") and a detailed revenue and expense budget ("**Operating Budget**").  The Cap Ex Budget and the Operating Budget each shall in form and substance be reasonably acceptable to Buyer and the Estate Representative, which shall exercise reasonable business judgment in considering such budgets.  The Operating Budget shall include line items for Service Charges, Management Fees, Interest, Dutch Packing and for management compensation. Buyer shall provide the Estate Representative no later than thirty (30) days prior to each anniversary of the Closing the Cap Ex Budget and the Operating Budget for the next Annual Period.  The forecast provided by Colorado on March 23, 2015 shall be deemed to be the Cap Ex Budget and the Operating Budget for the first year post-Closing (a copy of which is Exhibit 2.2 hereto (the "**2015 Budget**")).  Buyer shall provide the Estate Representative no later than thirty (30) days after the end of each calendar quarter during the term of the Earn-out, a written variance report of actual results against the budget.  Buyer shall not permit variances of greater than 10% on any line item or greater than 5% in the aggregate absent consent of the Estate Representative, which shall exercise reasonable business judgment in the event of such variances.

The calculation of Net Income shall be made using the format no less detailed, and the same accounting principles applied or calculated in a manner no less favorable to the interests of the Crofton Companies and their successors, as utilized in the 2015 Budget.

The calculation of Net Income shall be provided to the Estate Representative with the Earn-out Payment.  The calculation shall be presented in reasonable detail and certified to the Buyer and the Estate Representative by an independent certified public accounting firm (the "**CPA**")

7

selected and paid for by Buyer which CPA shall be reasonably acceptable to Buyer and the Estate Representative. The Estate Representative shall have access to the CPA's workpapers and the Buyer shall cooperate fully in any review or investigation the Estate Representative or its professionals may undertake, with the Estate Representative being responsible for any fees and expenses of itself or its professionals in connection with such review or investigation.

2.3    Closing. The closing of the purchase and sale of the Acquired Assets (the "**Closing**") shall take place as described in Article VIII, provided that the closing conditions set forth in Article VII shall have been satisfied or waived in writing as provided therein at or prior to the Closing. The date and time at which the Closing occurs shall be referred to in this Agreement as the "**Closing Date**." Closing shall be deemed to have occurred at 12:01 a.m. local Tampa, Florida time.

2.4    Proration. All ordinary course of business expenses incurred, such as utilities, will be prorated as of the Closing Date, such that the Buyer is responsible for amounts incurred on or after the Closing Date, and the Crofton Companies are responsible for amounts incurred prior to the Closing Date.

    (a)    In connection with the transfer of the Owned Property purchased pursuant to this Agreement: (i) the real property taxes shall be prorated as of the Closing Date in accordance with the local custom of the county in which the real estate is located as determined by the title company; (ii) the Crofton Companies shall seek an exemption for the transfer taxes which otherwise shall be paid by the Buyer; (iii) the title insurance premiums shall be paid by the Buyer; and (iv) the recording fees, escrow fees and closing fees shall be paid by the Buyer.

    (b)    The estimated net amounts of all such prorations shall be subtracted from the Purchase Price if the Buyer is entitled to a credit therefor or added to the Purchase Price if the Crofton Companies are entitled to a credit therefor. The Buyer and the Crofton Companies shall use their reasonable efforts to calculate all prorations at or prior to Closing, including taking readings or other measurements of utilities.

2.5    Allocation of Purchase Price. The Buyer shall allocate the Cash Component of the Purchase Price as follows:

| | |
|---|---|
| Tampa Property: | $1,347,030 |
| C&S Equipment: | $  898,020 |
| C&S Inventory: | $  352,635 |
| C&S Intangibles: | $1,202,315 |
| Waycross Property: | $  400,000 |
| L&D Equipment and Inventory: | $  200,000 |
| TOTAL: | $4,400,000 |

8

7360823.1

Exhibit A

The Buyer and the Crofton Companies and their Affiliates each shall report, act and file Tax Returns (including, but not limited to Internal Revenue Service Form 8594) in all respects and for all purposes consistent with such allocation. The Crofton Companies and Buyer and their Affiliates each shall timely and properly prepare, execute, file and deliver all such documents, forms and other information memorializing such allocation. Neither the Buyer nor the Crofton Companies shall take any position (whether in audits, tax returns or otherwise) that is inconsistent with such allocation unless required to do so by applicable law.

**ARTICLE III**
**REPRESENTATIONS AND WARRANTIES OF THE CROFTON COMPANIES**

The Crofton Companies, jointly and severally, represent and warrant to the Buyer as of the date hereof and as of the Closing Date, as follows:

3.1    <u>Organization and Qualification</u>.  Each of the Crofton Companies is organized, validly existing and in good standing, and, subject to the provisions of the Bankruptcy Code and the orders of the Bankruptcy Court, has the power and authority to own, lease and operate its properties and to carry on its Business as now conducted.

3.2    <u>Authorization; Enforceability</u>. Subject to the Bankruptcy Code and the orders of the Bankruptcy Court, the Crofton Companies have the requisite entity power and authority to execute and deliver this Agreement and carry out its obligations hereunder.

3.3    <u>Litigation</u>.  Subject to the Bankruptcy Code and the orders of the Bankruptcy Court, there are no Legal Proceedings pending, or to the Crofton Companies' Knowledge, Threatened, against the Crofton Companies other than scheduled claims, proofs of claim and the following Adversary Proceedings (A) *Lee et al. v. Crofton L & D Meats Holdings, LLC et al.*, No. 14-0414-CPM; and (B) *Crofton & Sons, Inc. et al. v. Kevin D. Crofton Business Trust*, No. 14-0979-CPM; nor are the Crofton Companies subject to any judgment, order or decree of any court or Governmental Authority that would seek to prevent any of the transactions contemplated by this Agreement.

3.4    <u>Brokers</u>.  No broker, finder or agent is entitled to any brokerage fees, finder's fees or commissions in connection with the transactions contemplated by this Agreement based upon arrangements made by or on behalf of the Crofton Companies.

**ARTICLE IV**
**REPRESENTATIONS AND WARRANTIES OF THE BUYER**

The Buyer hereby represents and warrants to the Crofton Companies as of the date hereof and as of the Closing Date, as follows:

4.1    <u>Organization and Qualification</u>.  The Buyer is organized, validly existing and in good standing, and has the power and authority to own, lease and operate its properties and to carry on its business as now conducted.

4.2    <u>Authorization; Enforceability</u>.  The Buyer has the requisite entity power and authority to execute and deliver this Agreement and carry out its obligations hereunder.

9

7360823.1

Exhibit A

4.3     No Consents.  No Consent of, permit or exemption from, or declaration, filing or registration with, any Person or Governmental Authority is required to be made or obtained by the Buyer in connection with the execution, delivery and performance of this Agreement by the Buyer and the consummation of the transactions contemplated hereby.

4.4     Litigation.     There are no Legal Proceedings pending, or to the Buyer's Knowledge, Threatened, against the Buyer, nor is the Buyer subject to any judgment, order or decree of any court or Governmental Authority that would seek to prevent any of the transactions contemplated by this Agreement.

4.5     Brokers.  No broker, finder or agent is entitled to any brokerage fees, finder's fees or commissions in connection with the transactions contemplated by this Agreement based upon arrangements made by or on behalf of the Buyer.

4.6     Financial Condition.  Not later than the execution of this Agreement, Buyer shall provide the Crofton Companies and the professionals for the Official Committee of Unsecured Creditors of Crofton & Sons, Inc. (the "Committee" and together with the Crofton Companies, the "Interested Parties") (a) written confirmation of the ownership and management of Buyer (the "Management") and (b) verification that Buyer has sufficient liquid financial wherewithal to pay the Cash Component of the Purchase Price, and to operate the Business, including paying future operating expenses and the Assumed Obligations (the "Wherewithal").  From the date hereof through the date of the Closing, Buyer promptly shall update the Interested Parties with (x) written confirmation of any changes to the Management, and (b) verification of any changes to the Wherewithal.

The representations and warranties of the Buyer in this **Article IV** shall survive the Closing for a period of one (1) year.

## ARTICLE V
## COVENANTS OF THE CROFTON COMPANIES

5.1     Conduct of Business.  Except as contemplated by this Agreement, from the date hereof through the Closing, each of the Crofton Companies covenants and agrees that it shall conduct the Business in the ordinary course of business consistent with its past practice and each of the Crofton Companies covenants and agrees that it shall:

(a)     not sell, assign, transfer, lease, license, encumber, mortgage or pledge any of the Acquired Assets except in the ordinary course of business on customary terms or upon entry of an order of the Court;

(b)     not amend, modify, terminate or grant any waiver under, any Assumed Contract except upon entry of an order of the Court;

(c)     not incur any Indebtedness (other than ordinary course of business trade indebtedness, including customer financial accommodations) except upon entry of an order of the Court.

10

7360823.1

5.2    Access and Information.  The Crofton Companies and its advisors shall afford to the Buyer and to the Buyer's financial advisors, legal counsel, accountants, consultants, financing sources and other authorized representatives identified in advance in writing to the Crofton Companies upon prior reasonable notice to the Crofton Companies and in accordance with those certain confidentiality and non-disclosure agreements dated October 10, 2014 and October 23, 2014 (collectively, the "**NDA**") reasonable access during normal business hours and without material disruption to the Business throughout the period prior to the Closing Date.

5.3    Bankruptcy Sale Procedures.  Promptly after the execution of this Agreement, the Crofton Companies shall take reasonable steps to (i) obtain an order from the Bankruptcy Court, including approval of a termination fee in an amount equal to $150,000 (the "**Stalking Horse Protection Fee**"), substantially in the form of **Exhibit E** hereto (the "**Procedures Order**") approving (A) this Agreement as an approved stalking horse bid; (B) the bidding protections and procedures governing any competing bid ("**Competing Bid**") and for an auction (the "**Auction**") and for assumption and assignment of executory contracts and unexpired leases and other matters set forth in the Procedures Order and (ii) file a 363 sale motion (the "**Sale Motion**") to obtain an order from the Bankruptcy Court approving this Agreement should the purchase offer made by this Agreement constitute the highest and best offer for the Acquired Assets pursuant to the Procedures Order.

5.4    Cure of Defaults.  Each of the Crofton Companies, as applicable, shall, at or prior to the Closing, and at the sole expense of Buyer, cure any and all defaults under the Assumed Contracts, so that such Assumed Contracts may be assumed by the applicable Crofton Companies and assigned to the Buyer in accordance with the provisions of Section 365 of the Bankruptcy Code.

## ARTICLE VI
## COVENANTS OF THE BUYER

6.1    Efforts to Consummate.  The Buyer shall use Reasonable Efforts to take, or cause to be taken, all actions, and to do, or cause to be done, all things necessary, proper or advisable in compliance with applicable Laws to consummate and make effective, as soon as reasonably practicable, the transactions contemplated hereby.

6.2    Press Releases and Public Disclosure.  Prior to the Closing, the Buyer shall not, without the prior written consent of the Crofton Companies (which will not be unreasonably withheld, delayed or conditioned), or except as required by Law, issue any press release or otherwise make any public statement or other public disclosure regarding this Agreement or any of the transactions contemplated hereby, except to the extent necessary in discussions by the Buyer with customers and suppliers of the Crofton Companies.

6.3    Confidential Information.  The Buyer acknowledges that the Confidential Information (as defined in the NDA) provided to it in connection with this Agreement and the consummation of the transactions contemplated hereby, is subject to the NDA, the terms of which are incorporated herein by reference.

11

7360823.1

Exhibit A

6.4     Further Assurances.  The Buyer agrees to execute and deliver such instruments, and take such other actions, as may reasonably be required, whether prior to, at or after the Closing, to carry out the terms of this Agreement and consummate the transactions contemplated hereby.

<h3 style="text-align:center">ARTICLE VII<br>CONDITIONS PRECEDENT TO THE CLOSING</h3>

7.1     Conditions Precedent to Obligations of the Buyer.  The obligations of the Buyer under this Agreement to consummate the transactions contemplated hereby will be subject to the satisfaction, at or prior to the Closing, of all of the following conditions, any one or more of which may be waived in writing at the option of the Buyer:

      (a)     Sale Order.  The Bankruptcy Court shall have entered the Sale Order.

      (b)     Purchase and Sale Agreement.  The Crofton Companies shall have executed and delivered the Purchase and Sale Agreement.

7.2     Conditions Precedent to Obligations of the Crofton Companies »

.  The obligations of the Crofton Companies under this Agreement to consummate the transactions contemplated hereby will be subject to the satisfaction, or prior to the Closing, of all the following conditions, any one or more of which may be waived in writing at the option of the Crofton Companies:

      (a)     Sale Order.  The Bankruptcy Court shall have entered the Sale Order.

<h3 style="text-align:center">ARTICLE VIII<br>CLOSING</h3>

8.1     Time and Place.  The Closing shall take place at the offices of Stichter, Riedel, Blain & Prosser, P.A., in Tampa, Florida, on the date that is two (2) business days after the satisfaction or waiver in writing of the conditions set forth in **Article VII** (other than those conditions that by their terms shall be or must necessarily be satisfied at the Closing), or such other date as the Buyer and the Crofton Companies mutually agree.

8.2     Deliveries by the Crofton Companies.  At the Closing, the Crofton Companies shall deliver or cause to be delivered to the Buyer:

      (a)     Assignment and Assumption Agreements.  Each Assignment and Assumption Agreement in the form of Exhibit A, duly executed by the Crofton Companies.

      (b)     Deeds.  Each Deed in the form of Exhibit B, duly executed by the applicable Crofton Company.

      (c)     Bills of Sale.  Each Bill of Sale in the form of Exhibit C, duly executed by the Crofton Companies.

12

7360823.1

Exhibit A

    (d) <u>Assignment of Trademarks</u>. The Assignment of Trademarks in the form of Exhibit D, duly executed by the Crofton Companies, as applicable;

    (e) <u>The Crofton Companies Resolutions</u>.  A copy of the resolutions of the board of directors or managers, and of the shareholders or members, of each of the Crofton Companies, certified by an officer of the Crofton Companies as having been duly adopted and being in full force and effect, authorizing the execution and delivery of this Agreement and the Crofton Companies' Documents and the performance by the Crofton Companies of its obligations hereunder and thereunder.

    (f) <u>Other Crofton Companies' Documents</u>.  Each other Crofton Companies' Document, duly executed by the Crofton Companies.

  8.3 <u>Deliveries by the Buyer</u>.  The Buyer will deliver or cause to be delivered to the Crofton Companies:

    (a) <u>The Purchase Price</u>.  Payment of the Purchase Price as provided in Article II.

    (b) <u>Assignment and Assumption Agreements</u>.  Each Assignment and Assumption Agreement, duly executed by the Buyer.

    (c) <u>Resolutions</u>.  A copy of the resolutions of the Buyer's sole member authorizing the execution and delivery of this Agreement and the Buyer Documents and the performance by the Buyer of its obligations hereunder and thereunder.

    (d) <u>Other Buyer Documents</u>.  Each other Buyer Document, duly executed by the Buyer.

    (e) <u>Other Documents</u>.  Such other documents and instruments as the Crofton Companies or its counsel shall deem reasonably necessary to consummate the transactions contemplated hereby.

**ARTICLE IX**
**TERMINATION**

  9.1 <u>Termination Events</u>.  Notwithstanding anything herein to the contrary, this Agreement may be terminated:  (a) on or prior to the Closing Date by mutual written consent of the Buyer and the Crofton Companies; (b) by the Buyer if, by the Closing Date, any of the conditions specified in <u>Section 7.1</u> of this Agreement to the Buyer's obligation to close has not been satisfied and shall not have been waived by the Buyer; (c) by the Crofton Companies if, by the Closing Date, any of the conditions specified in <u>Section 7.2</u> of this Agreement to the Crofton Companies' obligation to close has not been satisfied and shall not have been waived by the Sellers; (d) by the Crofton Companies, if the Crofton Companies accept and the Bankruptcy Court approves a higher and better Competing Bid; (e) by the Buyer or the Crofton Companies if the Closing shall not have taken place on or before May 15, 2015 (which date may be extended by Bankruptcy Court order or mutual agreement of the Buyer and the Crofton Companies),

13

Exhibit A

unless the Party desiring to terminate this Agreement pursuant to his subsection (e) is in default hereunder; or (f) by the Buyer as otherwise expressly provided in this Agreement.

9.2     <u>Sale to Other Purchaser.</u>.  If the sale of the Assets to a purchaser other than the Buyer is consummated in accordance with the Sale Procedures Order, then the Crofton Companies shall pay the Buyer the Stalking Horse Protection Fee and Crofton Companies' lawyers shall return the Buyer Deposit to the Buyer.

9.3     <u>Buyer's Breach</u>.  In the event that no Closing occurs and this Agreement is terminated due to the Buyer's breach of this Agreement, then (a) the Crofton Companies shall be paid the Buyer Deposit as liquidated damages, and (b) no Party shall have any further rights or obligations hereunder (without waiving any rights or obligations under the NDA).

9.4     <u>Other than Buyer's Breach</u>.  In the event that no Closing occurs and this Agreement is terminated due to any reason other than the Buyer's breach of this Agreement, then (a) the Buyer shall be paid the Buyer Deposit as liquidated damages, and (b) no Party shall have any further rights or obligations hereunder(without waiving any rights or obligations under the NDA).

**ARTICLE X**
**OTHER COVENANTS OF THE PARTIES**

10.1     <u>Employment</u>.  The Crofton Companies shall terminate all Employees located at the Facilities on the Closing Date and the Buyer shall offer employment effective as of the Closing to such employees who are specifically identified on **Schedule 10.1** on terms and conditions determined by the Buyer in its discretion.  Notwithstanding any other term of this Agreement to the contrary, Buyer shall deliver to the Crofton Companies a completed **Schedule 10.1** two days prior to the Closing.  Such Persons who accept the Buyer's offer of employment shall be referred to as the "**Transferred Employees**."  To facilitate the Buyer's obligations under this **Section 10.1**, upon request, each of the Crofton Companies, as applicable, shall provide the Buyer within a reasonable period prior to the Closing a true and correct list of all Employees, including with respect to any inactive Employee, the reason for such inactive status and, if applicable, the anticipated date of return to active employment.  With respect to the Transferred Employees, after the Closing Date, (i) the Buyer shall be responsible for all liabilities, obligations and commitments relating to all wages, salaries, bonuses, vacation, sick leave and other forms of compensation and related expenses, workers' compensation claims, and employee benefit liabilities under any and all plans, programs and arrangements maintained or contributed to by the Buyer and its Affiliates for the benefit of the Transferred Employees, if and to the extent incurred or accrued after the Closing Date, and (ii) the applicable Crofton Companies shall be responsible for all liabilities, obligations and commitments relating to all wages, salaries, bonuses, sick leave and other forms of compensation and related expenses, and workers' compensation claims and for any and all employee benefits incurred under any and all current or former Employee Plans/Agreements maintained or contributed to by the applicable Crofton Companies, whether incurred or accrued on or before the Closing Date.  The applicable Crofton Companies shall maintain COBRA continuation coverage under any Employee Plan/Agreement that is a group health plan for any "qualified beneficiary" (as defined in Section 4980B(g)(1) and Section 607(3) of ERISA) who elects such coverage and pays the required premiums for such coverage.  Except as otherwise specifically set forth herein, the Crofton Companies shall have no responsibility whatsoever for any liabilities or obligations that relate in

7360823.1

any way to such Transferred Employee's employment with the Buyer or termination by the Buyer.

10.2    Employee Benefits.    Effective as of the Closing Date, the Buyer shall cause each Transferred Employee who was covered under the Employee Plans immediately prior to the Closing Date to be covered under employee benefit plans, programs and arrangements maintained or established by the Buyer (the "**Buyer Plans**"), in accordance with the terms of the Buyer Plans. .

10.3    Tax Matters.    Without the prior written consent of the Buyer, the Crofton Companies shall not make or change any election, change an annual accounting period, adopt or change any accounting method, file any amended Tax Return, enter into any closing agreement, settle any Tax claim or assessment relating to the Acquired Assets, surrender any right to claim a refund of Taxes, consent to any extension or waiver of the limitation period applicable to any Tax claim or assessment relating to the Acquired Assets, or take any other similar action relating to the filing of any Tax Return or the payment of any Tax, if such election, adoption, change, amendment, agreement, settlement, surrender, consent or other action would have the effect of increasing the Tax liability relating to the Acquired Assets for any period ending after the Closing Date or decreasing any Tax attribute of Target or any of its Subsidiaries existing on the Closing Date. .

10.4    Postpetition Obligations.    Notwithstanding any other provision of this Agreement, any obligations under this Article X. or any other unpaid postpetition obligations of the Crofton Companies shall be included in Section 1.3(c).

## ARTICLE XI
## MISCELLANEOUS

11.1    Notices, Consents, etc.    Any notices, consents or other communications required to be sent or given hereunder by any of the Parties shall in every case be in writing and shall be deemed properly served if and when (a) delivered by hand, (b) transmitted by facsimile with confirmation of transmission, or (c) delivered by Federal Express or other express overnight delivery service, or registered or certified mail, return receipt requested, to the Parties at the addresses as set forth below or at such other addresses as may be furnished in writing:

15

    (a)   If to the Crofton Companies:

        Crofton & Sons, Inc.
        Attention: Kevin D. Crofton
        10250 Woodberry Rd.
        Tampa, Florida 33619

        And

        Scott A. Stichter, Esq.
        Stichter, Riedel, Blain & Prosser, P.A.
        110 East Madison Street, Suite 200
        Tampa, Florida 33602
        Email:sstichter@srbp.com

      With a copy to:
        Daniel A. DeMarco, Esq.
        Hahn Loeser & Parks LLP
        200 Public Square, Suite 2800
        Cleveland, Ohio  44114
        Email:dademarco@hahnlaw.com

       If to the Buyer:

        Colorado Boxed Beef Company
        c/o John J. Rattigan Jr.
        302 Prospect Road
        Auburndale, Florida 33823

      With a copy to:
        Mark Turner, Esq.
        Straughn & Turner, P. A.
        255 Magnolia Avenue, SW
        Winter Haven, Florida 33880
        Email:MTurner@StraughnTurner.com

Date of service of such notice shall be (x) the date such notice is delivered by hand, (y) one business day following the delivery by facsimile or by express overnight delivery service, or (z) three days after the date of mailing if sent by certified or registered mail.

    11.2   <u>Severability</u>.   The unenforceability or invalidity of any provision of this Agreement shall not affect the enforceability or validity of any other provision.

    11.3   <u>Successors; Assignment</u>.  This Agreement will be binding upon, and inure to the benefit of, the Parties hereto and their respective successors and permitted assigns, but will not be assignable or delegable by the Buyer without the prior written consent of the Crofton Companies.  Notwithstanding the foregoing, the Buyer shall be permitted after the Auction to

16

Exhibit A

assign, in whole or in part, its right to purchase the Acquired Assets, or to transfer this Agreement to one or more affiliates of, or one or more entities controlled by, the Buyer.

11.4    Counterparts; Facsimile or Electronic Signatures.    This Agreement may be executed simultaneously in multiple counterparts, each of which shall be deemed an original but all of which together shall constitute one and the same instrument. This Agreement, any and all agreements and instruments executed and delivered in accordance herewith, along with any amendments hereto or thereto, to the extent signed and delivered by means of a facsimile machine or other means of electronic transmission, shall be treated in all manner and respects and for all purposes as an original signature, agreement or instrument and shall be considered to have the same binding legal effect as if it were the original signed version thereof delivered in person.

11.5    Expenses.    Except as otherwise set forth in this Agreement, each of the Parties hereto shall pay its own fees, costs and expenses, including attorney's fees, incurred in connection with the negotiation, preparation, execution and delivery of this Agreement and each other agreement, document and instrument contemplated by this Agreement and the consummation of the transactions contemplated hereby and thereby. Without limiting the generality of the foregoing, the Crofton Companies shall seek exemption under Section 1146 of all transfer, documentary, sales, use, stamp, registration and other such Taxes, and all conveyance fees, recording charges and other fees and charges (including any penalties and interest) incurred in connection with the consummation of the transactions contemplated by this Agreement which otherwise shall be paid by Buyer when due, and Buyer shall, at its own expense, file all necessary Tax Returns and other documentation with respect to all such Taxes, fees and charges, and, if required by applicable Law, the Parties will, and will cause their respective Affiliates to, join in the execution of any such Tax Returns and other documentation.

11.6    Table of Contents and Headings.    The table of contents and section headings of this Agreement are included for reference purposes only and shall not affect the construction or interpretation of any of the provisions of this Agreement.

11.7    Definitions.    As used in this Agreement,

"**Acquired Assets**" shall have the meaning ascribed to it in **Section 1.1**.

"**Affiliate**" shall have the meaning given for that term in Rule 405 under the Securities Act of 1933, as amended, and shall include each past and present Affiliate of a Person and the members of such Affiliate's immediate family and any trust, the beneficiaries of which are such individuals or relatives.

"**Agreement**" shall have the meaning ascribed to it in the Introduction.

"**Annual Period**" shall have the meaning ascribed to it in **Section 2.2.**

"**Assignment and Assumption Agreements**" shall have the meaning ascribed to it in **Section 1.5(a)**.

"**Assignment of Trademarks**" shall have the meaning ascribed to it in **Section 1.5(d)**.

17

7360823.1

"**Assumed Contracts**" shall have the meaning ascribed to it in **Section 1.1(m)**.

"**Assumed Liabilities**" shall have the meaning ascribed to it in **Section 1.3**.

"**Assumed Obligations**" shall have the meaning ascribed to it in **Section 2.1**.

"**Auction**" shall have the meaning ascribed to it in **Section 5.3**.

"**Bankruptcy Case**" shall have the meaning ascribed to it in the Recitals.

"**Bankruptcy Code**" shall have the meaning ascribed to it in the Recitals.

"**Bankruptcy Court**" shall have the meaning ascribed to it in the Recitals.

"**Bills of Sale**" shall have the meaning ascribed to it in **Section 1.5(c)**.

"**Business**" shall have the meaning ascribed to it in the Recitals.

"**Buyer**" shall have the meaning ascribed to it in the Introduction.

"**Buyer Companies**" shall have the meaning ascribed to it in the Introduction.

"**Buyer Plans**" shall have the meaning ascribed to it in **Section 10.2.**

"**C&S**" shall have the meaning ascribed to it in the Introduction.

"**Cap Ex Budget**" shall have the meaning ascribed to it in **Section 2.2(b)(vii).**

"**Cash Component**" shall have the meaning ascribed to it in **Section 2.1.**

"**Closing**" shall have the meaning ascribed to it in **Section 2.3.**

"**Colorado**" shall have the meaning ascribed to it in the Introduction.

"**Closing Date**" shall have the meaning ascribed to it in **Section 2.3.**

"**Committee**" shall have the meaning ascribed to it in **Section 4.6.**

"**Competing Bid**" shall have the meaning ascribed to it in **Section 5.3**.

"**Consent**" means any approval, consent, ratification, waiver, or other authorization.

"**Contract**" means any written or oral agreement, note, mortgage, indenture, lease, deed of trust, license, plan, instrument or other contract, including but not limited to any purchase orders or releases thereunder.

"**CPA**" shall have the meaning ascribed to it in **Section 2.2(b).**

7360823.1

Exhibit A

"**Crofton Companies**" and "**Crofton Company**" shall have the meaning ascribed to them in the Introduction.

"**Crofton Companies' Intellectual Property**" shall mean all Intellectual Property rights of each of the Crofton Companies.

"**Deeds**" shall have the meaning ascribed to it in **Section 1.5(b)**.

"**Earn-out**", "**Earn-out Payment**", "**Earn-out Payment Date**" and "**Earn-out Period**" each shall have the meaning ascribed to it in **Section 2.2**.

"**Employee**" means all individuals, as of the date hereof actively at work as of the date hereof, or who otherwise will have re-hire or reinstatement rights with any of the Crofton Companies under applicable Law, who are employed by any of the Crofton Companies in connection with the Business, together with hourly "at will" employees who are hired by the any of Crofton Companies in respect of the Business after the date hereof.

"**Employee Plans/Agreements**" shall have the meaning ascribed to it in **Section 3.23(a)**.

"**Equipment**" shall have the meaning ascribed to it in **Section 1.1(f)**.

"**ERISA**" means the Employee Retirement Income Security Act of 1974, as amended.

"**ERISA Affiliate**" means any entity that is a member of a controlled group of corporations (as defined in Section 414(b) of the Code) of which any of the Crofton Companies is a member, an unincorporated trade or business under common control with the Crofton Companies (as determined under Section 414(c) of the Code), or a member of an "affiliated service group" (within the meaning of Section 414(m) of the Code) of which any of the Crofton Companies are a member.

"**Equipment**" shall have the meaning ascribed to it in **Section 1.1(f)**.

"**Estate Representative**" shall have the meaning ascribed to it in **Section 2.2**.

"**Excluded Assets**" shall have the meaning ascribed to it in **Section 1.2**.

"**Excluded Liabilities**" shall have the meaning ascribed to it in **Section 1.4**.

"**Facilities**" shall include, but not be limited to the Tampa Property and the Waycross Property and shall have the meaning ascribed to it in **Section 1.1(a)**.

"**Governmental Authority**" shall mean any federal, state, provincial, local or foreign government, or any subdivision, agency or authority of any thereof having jurisdiction over any of the Crofton Companies, the Buyer or the transactions contemplated by this Agreement, as applicable.

"**Intellectual Property**" of any Person means all intellectual property, confidential information, and proprietary information of such Person, including, but not limited to, (a) patents

19

7360823.1

and patent applications (including all reissues, continuations, continuations-in-part, revisions, extensions and reexaminations thereof) and patent disclosures and inventions (whether or not patentable and whether or not reduced to practice); (b) trademarks, service marks, trade dress, trade names, Internet domain names, assumed names and corporate names, together with the goodwill of the business associated with and symbolized by such trademarks, service marks, trade dress, trade names and corporate names, in each case whether or not registered; (c) published and unpublished works of authorship, whether copyrightable or not, including all statutory and common law copyrights associated therewith; (d) all registrations, applications, extensions and renewals for any of the terms listed in clauses (b) and (c); (e) trade secrets; (f) websites; (g) all computer programs, including operating systems, applications, routines, interfaces, all algorithms, whether in source code or object code, and electronic files or data stored on any computer owned, licensed or used by the Crofton Companies that may be legally transferred; and (h) lists of customers and potential customers (including any lists of electronic mail addresses of customers and potential customers); formulae; compositions; know-how; research and development information; processes and business methods; artwork and graphic design; manuscripts; drawings; specifications; list of suppliers and service providers; pricing and cost information and records; test reports; manuals; financial, business, sales and marketing proposals, research, data, and plans; technical and computer data; databases; documentation; promotional materials and related information; and other intellectual property, confidential information and proprietary rights, in each case in any medium, including digital, and in any jurisdiction, together with all causes of action, judgment, settlements, claims and demands of any nature related thereto, including the right to prosecute any past infringements or other violations thereof.

"**Interest**" shall have the meaning ascribed to it in **Section 2.2(b)(v).**

"**Interested Parties**" shall have the meaning ascribed to it in **Section 4.6.**

"**L&D**" shall have the meaning ascribed to it in the Introduction.

"**Law**" means each provision of any currently implemented federal, state, local or foreign law, statute, ordinance, order, code, rule or regulation, promulgated or issued by any Governmental Authority.

"**Licenses and Permits**" means any licenses, permits, certificates, notifications, exemptions, classifications, registrations, franchises, approvals, orders or similar authorizations, or any waivers of the foregoing, issued by any Governmental Authority or private accrediting agency related to the Business.

"**Liens**" means any mortgage, pledge, hypothecation, right of others, claim, security interest, encumbrance, lease, sublease, license, occupancy agreement, adverse claim or interest, easement, covenant, encroachment, burden, title defect, title retention agreement, voting trust agreement, interest, equity, option, lien, right of first refusal, charge or other restrictions or limitations of any nature whatsoever, other than (i) restrictions on the offer and sale of securities under applicable securities Laws and (ii) any Permitted Liens.

"**Management**" shall have the meaning ascribed to it in **Section 4.6.**

7360823.1

"**Management Fees**" shall have the meaning ascribed to it in **Section 2.2(b)(iv).**

"**NDA**" shall have the meaning ascribed to it in **Section 5.2.**

"**Net Income**" shall have the meaning ascribed to it in **Section 2.2.**

"**Operating Budget**" shall have the meaning ascribed to it in **Section 2.2(b)(vii).**

"**Party**" and "**Parties**" shall have the meanings ascribed to them in the Introduction.

"**Permitted Liens**" means (a) Liens for Taxes not yet due and payable, (b) statutory Liens of landlords for amounts not yet due and payable, (c) Liens of carriers, warehousemen, mechanics and materialmen incurred in the ordinary course of business for amounts not yet due and payable, (d) Liens attaching to inventory held by consignees in the ordinary course of business, and (e) Liens that will be terminated at or upon Closing (even if any such termination has yet to be registered by a Governmental Authority).

"**Person**" shall mean any individual, sole proprietorship, partnership, joint venture, trust, unincorporated association, corporation, limited liability company, entity or government (whether federal, state, county, city or otherwise, including, without limitation, any instrumentality, division, agency or department thereof).

"**Post-petition**" shall mean arising on or after the time that each respective Bankruptcy Case was filed.

"**Pre-petition**" shall mean arising before the time that each respective Bankruptcy Case was filed.

"**Procedures Order**" shall have the meaning ascribed to it in **Section 5.3.**

"**Purchase Price**" shall have the meaning ascribed to it in **Section 2.1(a)**.

"**Reasonable Efforts**" shall mean the good faith efforts that a reasonably prudent Person desirous of achieving a result would use in similar circumstances to ensure that such result is achieved as reasonably expeditiously as possible.

"**Sale Motion**" shall have the meaning ascribed to it in **Section 5.3.**

"**Service Charges**" shall have the meaning ascribed to it in **Section 2.2(b)(3).**

"**Stalking Horse Protection Fee**" shall have the meaning ascribed to it as set forth in Section 5.3.

"**Tampa Property**" shall have the meaning ascribed to it in **Section 1.1(a)**.

"**Tax or Taxes**" means any federal, state, local, or foreign income, gross receipts, license, payroll, employment, excise, severance, stamp, occupation, premium, windfall profits, environmental (including taxes under Code §59A), customs duties, capital stock, franchise, profits, withholding, social security (or similar), unemployment, disability, real property,

21

7360823.1

personal property, sales, use, transfer, registration, value added, alternative or add-on minimum, estimated, or other tax of any kind whatsoever, including any interest, penalty, or addition thereto, whether disputed or not.

"**Tax Return**" means any return, declaration, report, claim for refund, or information return or statement relating to Taxes, including any schedule or attachment thereto, and including any amendment thereof.

"**Threatened**" means a claim, proceeding, dispute, action or other matter with respect to which any demand or statement has been made in writing or any notice of commencement of an action or suit has been given in writing.

"**Transferred Employees**" shall have the meaning ascribed to it in **Section 10.1**.

"**Waycross Property**" shall have the meaning ascribed to it in **Section 1.1(a)**.

"**Wherewithal**" shall have the meaning ascribed to it in **Section 4.6**.

11.8    Entire Agreement.  This Agreement, the recitals hereto, the Crofton Companies' Schedules, the other Schedules and the Exhibits attached hereto, along with the Confidentiality Agreement, set forth the entire understanding of the Parties with respect to the transactions contemplated hereby, supersede all prior discussions, understandings, agreements and representations and shall not be modified or affected by any offer, proposal, statement or representation, oral or written, made by or for any Party in connection with the negotiation of the terms hereof.  This Agreement may be modified only by subsequent instruments signed by the Parties hereto.

11.9    Third Parties.    Nothing herein expressed or implied is intended or shall be construed to confer upon or give to any Person, other than the Parties to this Agreement, any rights or remedies under or by reason of this Agreement.

11.10    Interpretive Matters.  Unless the context otherwise requires, (a) all references to articles, sections, schedules or exhibits are to Articles, Sections, Schedules or Exhibits in this Agreement, (b) each accounting term not otherwise defined in this Agreement has the meaning assigned to it in accordance with GAAP, (c) words in the singular or plural include the singular and plural, and pronouns stated in either the masculine, feminine or neuter gender shall include the masculine, feminine and neuter, and (d) the term "including" shall mean by way of example and not by way of limitation.  The Parties have participated jointly in the negotiation and drafting of this Agreement. In the event an ambiguity or question of intent arises, this Agreement shall be construed as if drafted jointly by the Parties, and no presumption or burden of proof shall arise favoring or disfavoring any Party by virtue of the authorship of any of the provisions of this Agreement.

11.11    Choice of Law; Jurisdiction.  This Agreement shall be construed and interpreted, and the rights of the parties determined in accordance with, the laws of the State of Florida (without regard to its conflicts of laws principles) and the Bankruptcy Code.   The parties hereto irrevocably submit to the exclusive jurisdiction of the Bankruptcy Court (or any court exercising appellate jurisdiction over the Bankruptcy Court) in any action or proceeding arising out of, or

22

7360823.1

relating to, this Agreement and any other agreement or instrument contemplated hereby or entered into in connection herewith, or any of the transactions contemplated hereby or thereby, and any matters and transactions related thereto shall be deemed to have arisen in the State of Florida.  Each party hereby irrevocably agrees that all claims in respect of such dispute or proceeding may be heard and determined in such courts. The parties hereby irrevocably waive, to the fullest extent permitted by applicable law, any objection which they may now or hereafter have to the laying of venue of any such dispute brought in such court or any defense of inconvenient forum in connection therewith.  Each Party agrees that service of summons and complaint or any other process that might be served in any action or proceeding may be made on such Party by sending or delivering a copy of the process to the Party to be served at the address of the Party and in the manner provided for the giving of notices in **Section 11.1**.  Nothing in this **Section 11.11**, however, shall affect the right of any Party to serve legal process in any other manner permitted by law.

*[Signature Page Follows.]*

7360823.1

Exhibit A

**IN WITNESS WHEREOF**, the Parties have executed this Agreement on the date first written above.

**BUYER: Abe's Finest Meats, LLC**          **Colorado Boxed Beef Company**

By: _____              By: _____
Name: ____John Sullivan____               Name: __John J. Ratigan Jr.__
Title: _____CFO_____                     Title: __Managing Director__

**CROFTON COMPANIES:**

**Crofton & Sons, Inc.**

By: _____
Name: ____Kevin D Crofton____
Title: ____Owner/Pres____

**Crofton L&D Meats Holdings, LLC**

By: _____
Name: ____Kevin D Crofton____
Title: ____Owner/Pres.____

7360823.1

## Exhibits and Schedules

### EXHIBITS:

| | | |
|---|---|---|
| Exhibit A | – | Assignment and Assumption Agreement |
| Exhibit B | – | Deeds |
| Exhibit C | – | Bill of Sale |
| Exhibit D | – | Assignment of Trademarks |
| Exhibit E | – | Procedures Order |

### SCHEDULES:

| | | |
|---|---|---|
| Schedule 10.1 | – | Transferred Employees |

7360823.1

Exhibit A

## ASSUMPTION AGREEMENT

THIS ASSUMPTION AGREEMENT is made and entered into this ___ day of _____, 2015, by and among (i) **Crofton & Sons, Inc., a Florida corporation** ("Crofton"), and **Crofton L&D Meats Holdings, LLC**, a Florida limited liability company ("L&D") (Crofton and L&D shall hereinafter be referred to collectively as "Sellers"), on the one hand, and (ii) _____, a _____ ("Buyer"), on the other hand.

### W I T N E S S E T H :

WHEREAS, Sellers, Buyer and Colorado Boxed Beef Co. ("Colorado" and collectively with Assignee, "Purchaser") are parties to that certain Purchase and Sale Agreement, dated as of March __, 2015 (the "Purchase Agreement"), pursuant to which Sellers have agreed to sell to Buyer, and Buyer has agreed to purchase from Assignors, substantially all of the Assets of Sellers (the "Purchased Assets"); and

WHEREAS, Purchaser agreed, pursuant to Section 1.3 of the Purchase Agreement, to assume from Sellers and to perform and discharge in accordance with their respective terms, certain liabilities of Sellers as hereinafter specified; and

WHEREAS, Sellers and Buyer desire to provide for the assumption, performance and discharge in accordance with their respective terms by Buyer of certain liabilities of Sellers as hereinafter specified, in accordance with the terms and conditions contained herein.

NOW, THEREFORE, in consideration of the premises and for other valuable consideration, the receipt, adequacy and sufficiency of which is hereby acknowledged by the parties hereto, the parties hereto hereby agree as follows:

1.    **Assumption**.  Buyer does hereby assume from Sellers shall perform and discharge in accordance with their respective terms the following liabilities of Sellers (collectively, the "Assumed Liabilities"):

(a)    All liabilities under the Assumed Contracts, including post-Closing warranty and service obligations;

(b)    All other liabilities arising out of, or with respect to, the Acquired Assets arising after the Closing;

(c)    All post-petition, ordinary course, related, trade payables in excess of $70,000, and those other liabilities and obligations, but expressly excluding any liability relating to the services performed by any professional in connection with the Bankruptcy;

(d)    All liabilities arising for accrued vacation pay, if any, of Transferred Employees as of the Closing Date; and

(e)    All liabilities arising out of, or with respect to, the operation of the Business by the Buyer or the Transferred Employees arising after the Closing.

2.    **Liabilities Not Assumed**.  Except for the Assumed Liabilities as set forth in Section 1 above, Buyer shall not assume or become liable for the payment or performance of any other liabilities of Sellers.  Sellers acknowledge and agree that Buyer is not assuming any of the Excluded Liabilities.

3.    **Effective Time**.  This Assumption Agreement shall be deemed to be effective immediately upon the Closing of the transactions contemplated by the Purchase Agreement.

4.    **No Waiver**.  None of the terms or provisions of this Assumption Agreement may be waived, altered, modified or amended except by an instrument in writing duly executed by Sellers and Buyer.

5.    **Binding Nature**.  This Assumption Agreement and all obligations of Buyer hereunder shall be binding upon and inure to the benefit of the successors and permitted assigns of Buyer, and shall inure to the benefit of Sellers and their successors and assigns.

6.    **Confirmation Order**.  This Assumption Agreement is executed pursuant to and in accordance with that certain Order _____, dated _____, 2015 (Doc. No. ___), entered by the United States Bankruptcy Court for the Middle District of Florida, Tampa Division, in Jointly Administered Case No. 8:14-bk-4208-CPM.

7.    **Capitalized Terms**.  Capitalized terms used herein and not otherwise defined herein shall have the meaning ascribed thereto in the Purchase Agreement.

2

Exhibit A
Exhibit A

IN WITNESS WHEREOF, Sellers and Buyer have caused this Assumption Agreement to be executed as of the day and year first above written.

**SELLERS:**

WITNESSES:

CROFTON & SONS, INC.,
a Florida corporation

_____
Witness Name: _____

By: _____
Print Name: _____
As its: _____

_____
Witness Name: _____

WITNESSES:

CROFTON L&D MEATS HOLDINGS, LLC,
a Florida limited liability company

_____
Witness Name: _____

By: _____
Print Name: _____
As its: _____

_____
Witness Name: _____

**BUYER:**

_____
Witness Name: _____

By: _____
Print Name: _____
As its: _____

_____
Witness Name: _____

3

Prepared by and return to:

---

This conveyance is being made pursuant to the terms of that certain Order Confirming Debtors' Joint Plan of
Reorganization (Doc No. ___), entered _____, 2015 in Jointly Administered Case No. 8:14-bk-4208-CPM in the
United States Bankruptcy Court, Middle District of Florida, Tampa Division, and is therefore exempt from
Documentary Stamp Tax pursuant to Title 11, Section 1146(a) of the United States Bankruptcy Code.

## QUIT CLAIM DEED

This Quit Claim Deed is made by Crofton L&D Meats Holdings, LLC, a Florida
corporation, as Debtor in Possession in Case No. 8:14-bk-5033-CPM, United States Bankruptcy
Court, Middle District of Florida, Tampa Division, and having an office located at
_____ ("Grantor"), in favor of _____, a _____,
and having an office located at _____ ("Grantee").

Grantor, in consideration of the sum of Ten and No/100 Dollars ($10.00) and other good
and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, does
hereby remise, release, and quitclaim to Grantee forever, all the right, title, interest, and claim
which Grantor has in and to the following described real property in Ware County, Georgia to-
wit (the "Property"):

See Exhibit "A" attached hereto.

The Property Appraiser's Parcel Identification Number for the above described property
is _____.

This Quit Claim Deed is executed and the Property is conveyed pursuant to and in
accordance with that certain Order _____, dated March ___, 2015 (Doc. No. ___)
(the "Order"), entered by the United States Bankruptcy Court for the Middle District of Florida,
Tampa Division, in Jointly Administered Case No. 8:14-bk-4208-CPM. A true and correct copy of
the Order is attached hereto as Exhibit "B".

Subject to valid easements, reservations and restrictions of record, governmental
regulations and real property taxes for the current year.

To have and to hold, the same together with all and singular the appurtenances thereto
belonging or in anywise appertaining, and all the estate, right, title, interest, lien, equity and

Exhibit B

Exhibit A

claim whatsoever of the Grantor, either in law or equity, to the only proper use, benefit and behalf of the Grantee forever.

Exhibit A

Executed on the ____ day of _____, 2015.

WITNESSES:                                          CROFTON L&D MEATS HOLDINGS,
                                                    LLC,
                                                    a Florida limited liability company

_____                    By: _____
Witness Name: _____                       Print Name: _____
                                                    As its: _____
_____
Witness Name: _____


STATE OF FLORIDA
COUNTY OF _____

        The foregoing instrument was acknowledged before me this ___ day of _____,
2015, by _____ as _____ of Crofton L&D Meats Holdings,
LLC, a Florida limited liability company, on behalf of the company.

                                        _____
                                        Notary Public
                                        Print Name:_____
                                        My Commission Expires:_____

Personally Known ____ (OR) Produced Identification ____
Type of identification produced _____

Exhibit B
Exhibit A

Exhibit "A"

The Property

All that tract or parcel of land situate, lying and being in Land Lot 101 of the 8th Land District of Ware County, Georgia, consisting of 3.16 acres, and being more particularly described as follows: Commence at the Northeast corner of said Land Lot 101 and run thence South 53 degrees 24 minutes 29 seconds West a distance of 1,490.63 feet to the POINT OR PLACE OF BEGINNING of the tract herein described; run thence South 14 degrees 07 minutes 15 seconds West a distance of 555.11 feet to a point on the northern margin of U.S. Hwy 82; run thence North 75 degrees 56 minutes 00 seconds West, along the northern margin of U.S. Hwy 82, a distance of 256.84 feet to a point; run thence North 14 degrees 08 minutes 40 seconds East a distance of 517.75 feet to a point; run thence South 84 degrees 12 minutes 52 seconds East a distance of 259.36 feet to the POINT OR PLACE OF BEGINNING; said tract being further described by the certain plat of survey prepared by Harry A. Strickland, Georgia Registered Land Surveyor, No. 2409, dated June 22, 2007, and recorded in Plat Book "A," Page 3652, in the office of the Clerk of the Ware Superior Court; said plat being incorporated herein by reference for description and all other legal purposes.

Exhibit "B"

The Order

<u>Prepared by and return to</u>:

---

This conveyance is being made pursuant to the terms of that certain Order Confirming Debtors' Joint Plan of Reorganization (Doc No. ___), entered _____, 2015 in Jointly Administered Case No. 8:14-bk-4208-CPM in the United States Bankruptcy Court, Middle District of Florida, Tampa Division, and is therefore exempt from Documentary Stamp Tax pursuant to Title 11, Section 1146(a) of the United States Bankruptcy Code.

## QUIT CLAIM DEED

This Quit Claim Deed is made by Crofton & Sons, Inc., a Florida corporation, as Debtor in Possession in Case No. 8:14-bk-4208-CPM, United States Bankruptcy Court, Middle District of Florida, Tampa Division, and having an office located at _____ ("<u>Grantor</u>"), in favor of _____, a _____, and having an office located at _____ ("<u>Grantee</u>").

Grantor, in consideration of the sum of Ten and No/100 Dollars ($10.00) and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, does hereby remise, release, and quitclaim to Grantee forever, all the right, title, interest, and claim which Grantor has in and to the following described real property in Hillsborough County, Florida to-wit (the "<u>Property</u>"):

See <u>Exhibit "A"</u> attached hereto.

The Property Appraiser's Parcel Identification Number for the above described property is U-17-29-20-2D2-000000-00040.0.

This Quit Claim Deed is executed and the Property is conveyed pursuant to and in accordance with that certain Order _____, dated March ___, 2015 (Doc. No. ___) (the "<u>Order</u>"), entered by the United States Bankruptcy Court for the Middle District of Florida, Tampa Division, in Jointly Administered Case No. 8:14-bk-4208-CPM.  A true and correct copy of the Order is attached hereto as <u>Exhibit "B"</u>.

Subject to valid easements, reservations and restrictions of record, governmental regulations and real property taxes for the current year.

To have and to hold, the same together with all and singular the appurtenances thereto belonging or in anywise appertaining, and all the estate, right, title, interest, lien, equity and

Exhibit B

Exhibit A

claim whatsoever of the Grantor, either in law or equity, to the only proper use, benefit and behalf of the Grantee forever.

Exhibit B

Exhibit A

Executed on the _____ day of _____, 2015.

WITNESSES:

CROFTON & SONS, INC.,
a Florida corporation

_____
Witness Name: _____

By: _____
Print Name: _____
As its: _____

_____
Witness Name: _____


STATE OF FLORIDA
COUNTY OF _____

    The foregoing instrument was acknowledged before me this ____ day of _____, 2015, by _____ as _____ of Crofton & Sons, Inc., a Florida corporation, on behalf of the corporation.

_____
Notary Public
Print Name:_____
My Commission Expires:_____

Personally Known _____ (OR) Produced Identification _____
Type of identification produced _____

Exhibit B

Exhibit A

Exhibit "A"

The Property

Lot 40, Fishers Farms Subdivision, according to the map or plat thereof recorded in Plat Book 26, Page 1 of the public Records of Hillsborough County, Florida

Exhibit A

Exhibit "B"

The Order

## BILL OF SALE

KNOW ALL MEN BY THESE PRESENTS that **Crofton & Sons, Inc.**, a Florida corporation (the "Seller"), for and in consideration of the sum of Ten and 00/100 Dollars ($10.00) and other good and valuable consideration to it in hand paid (including the Purchase Price), the receipt and sufficiency of which are hereby acknowledged, does hereby assign, grant, bargain, sell, transfer, convey, and deliver to _____, a _____ (the "Buyer"), all of the Seller's right, title and interest in and to the following described assets of the Seller (collectively, the "Assets"), free and clear of any and all Liens, "As Is", "Where Is" and "With All Faults" and without recourse, and without any implied or express representation or warranty of any kind whatsoever from the Seller:

SEE EXHIBIT A ATTACHED HERETO AND HEREBY INCORPORATED BY REFERENCE

TO HAVE AND TO HOLD THE SAME unto the Buyer and its successors and assigns forever.

This Bill of Sale is executed and the Assets are assigned, granted, bargained, sold, transferred, conveyed, and delivered to the Buyer pursuant to and in accordance with that certain Order _____, dated _____, 2015 (Doc. No. ___), entered by the United States Bankruptcy Court for the Middle District of Florida, Tampa Division, in Jointly Administered Case No. 8:14-bk-4208-CPM.

Notwithstanding anything to the contrary contained herein, the Assets shall not include any of the Excluded Assets as specifically set forth on Exhibit B attached hereto and incorporated herein by reference.

Capitalized terms used in this Bill of Sale and in Exhibit A attached hereto and not otherwise defined herein or therein shall have the meaning ascribed thereto in that certain Purchase and Sale Agreement, dated as of March __, 2015, by and among the Seller, Crofton L&D Meats Holdings, LLC, Buyer and Colorado Boxed Beef Co.

Exhibit C

Exhibit A

IN WITNESS WHEREOF, the Seller has caused this Bill of Sale to be executed and delivered effective as of the ___ day of _____, 2015.

WITNESSES:

CROFTON & SONS, INC.,
a Florida corporation

_____
Witness Name: _____

By: _____
Print Name: _____
As its: _____

_____
Witness Name: _____

STATE OF FLORIDA
COUNTY OF _____

The foregoing instrument was acknowledged before me this ___ day of _____, 2015, by _____ as _____ of Crofton & Sons, Inc., a Florida corporation, on behalf of the corporation.

_____
Notary Public
Print Name:_____
My Commission Expires:_____

Personally Known ____ (OR) Produced Identification ____
Type of identification produced _____

Exhibit C

Exhibit A

# EXHIBIT A

## ASSETS

Exhibit A

## EXHIBIT B

## EXCLUDED ASSETS

Exhibit A

## BILL OF SALE

KNOW ALL MEN BY THESE PRESENTS that **Crofton L&D Meats Holdings, LLC**, a Florida limited liability company (the "Seller"), for and in consideration of the sum of Ten and 00/100 Dollars ($10.00) and other good and valuable consideration to it in hand paid (including the Purchase Price), the receipt and sufficiency of which are hereby acknowledged, does hereby assign, grant, bargain, sell, transfer, convey, and deliver to _____, a _____ (the "Buyer"), all of the Seller's right, title and interest in and to the following described assets of the Seller (collectively, the "Assets"), free and clear of any and all Liens, "As Is", "Where Is" and "With All Faults" and without recourse, and without any implied or express representation or warranty of any kind whatsoever from the Seller:

SEE EXHIBIT A ATTACHED HERETO AND HEREBY INCORPORATED BY REFERENCE

TO HAVE AND TO HOLD THE SAME unto the Buyer and its successors and assigns forever.

This Bill of Sale is executed and the Assets are assigned, granted, bargained, sold, transferred, conveyed, and delivered to the Buyer pursuant to and in accordance with that certain Order _____, dated _____, 2015 (Doc. No. ___), entered by the United States Bankruptcy Court for the Middle District of Florida, Tampa Division, in Jointly Administered Case No. 8:14-bk-4208-CPM.

Notwithstanding anything to the contrary contained herein, the Assets shall not include any of the Excluded Assets as specifically set forth on Exhibit B attached hereto and incorporated herein by reference.

Capitalized terms used in this Bill of Sale and in Exhibit A attached hereto and not otherwise defined herein or therein shall have the meaning ascribed thereto in that certain Purchase and Sale Agreement, dated as of March __, 2015, by and among the Seller, Buyer, Crofton & Sons, Inc. and Colorado Boxed Beef Co.

Exhibit C

Exhibit A

IN WITNESS WHEREOF, the Seller has caused this Bill of Sale to be executed and delivered effective as of the ___ day of _____, 2015.

WITNESSES:

CROFTON L&D MEATS HOLDINGS, LLC, a Florida limited liability company

_____
Witness Name: _____

By: _____
Print Name: _____
As its: _____

_____
Witness Name: _____

STATE OF FLORIDA
COUNTY OF _____

The foregoing instrument was acknowledged before me this ___ day of _____, 2015, by _____ as _____ of Crofton L&D Meats Holdings, LLC, a Florida limited liability company, on behalf of the company.

_____
Notary Public
Print Name:_____
My Commission Expires:_____

Personally Known ____ (OR) Produced Identification ____
Type of identification produced _____

2
Exhibit C

Exhibit A

**EXHIBIT A**

**ASSETS**

Exhibit A

## EXHIBIT B

### EXCLUDED ASSETS

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

**ASSIGNOR:  CROFTON AND SONS, INC.**
**ASSIGNEE:  ABE'S FINEST MEATS, LLC**

**TRADEMARK ASSIGNMENT**

**THIS ASSIGNMENT** is made and entered into as of the ___ day of _____, 2015, by and between CROFTON AND SONS, INC., a Florida corporation, with its principal office located at 10250 Woodberry Rd. Tampa, FL 33619 ("Assignor"), and ABE'S FINEST MEATS, LLC, a Florida limited liability company with its principal office located at 302 Prospect Road, Auburndale, Florida 33823 ("Assignee").

**W I T N E S S E T H:**

**WHEREAS,** Assignor has adopted the following trademarks (the "Trademarks") and is the owner of the Florida and United States registration issued thereon (the "Registrations"), respectively;

| Trademark | USPTO Registration No. | Filing or Registration Date |
|---|---|---|
|  | 3365049 | January 8, 2008 |

| Trademark | Florida Registration No. | Filing or Registration Date |
|---|---|---|
|  | T00000000472 | April 20, 2000 |

**WHEREAS,** Assignor desires to convey, transfer and assign to Assignee all of Assignor's right, title and interest in and to the Trademarks and the Registrations together with the goodwill of the business in

Exhibit D

Exhibit A

connection with which the Trademarks are used and which are symbolized by the Trademarks, along with the right to sue and recover damages and profits for past infringements thereof; and

**WHEREAS,** Assignee desires to acquire from Assignor all of Assignor's right, title and interest in and to the Trademarks and the Registrations together with the goodwill of the business in connection with which the Trademarks are used and which is symbolized by the Trademarks, along with the right to sue and recover damages and profits for past infringements thereof.

**NOW, THEREFORE,** for good and valuable consideration, the receipt and adequacy of which is hereby acknowledged, Assignor hereby conveys, transfers and assigns to Assignee, its successors and assigns, AS-IS, WHERE-IS all of Assignor's right, title and interest in and to the Trademarks and the Registrations, together with all of the goodwill of the business in connection with which the Trademarks are used and which is symbolized by the Trademarks, along with the right to sue and recover damages and profits for past infringements thereof.

Exhibit D

Exhibit A

**IN WITNESS WHEREOF,** Assignor has caused this Assignment to be duly executed as of the day and year first above written.

<u>ASSIGNEE</u>:

ABE'S FINEST MEATS, LLC

By:_____
    NAME, TITLE

Sworn to and subscribed before me on this _____ day of _____, 2015, _____
                                                                   (Name of Individual Signing)

[  ] who is personally known to me       [  ] whose identity I proved on the basis of _____

(Notary Seal)

_____
Signature of Notary Public

<u>ASSIGNOR</u>:

CROFTON AND SONS, INC.

By:_____
    NAME, TITLE

Sworn to and subscribed before me on this _____ day of _____, 2015, _____
                                                                    (Name of Individual Signing)

[  ] who is personally known to me       [  ] whose identity I proved on the basis of _____

(Notary Seal)

_____
Signature of Notary Public

Exhibit D

Exhibit A

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION
www.flmb.uscourts.gov

| | |
|---|---|
| In re: | Chapter 11 |
| CROFTON & SONS, INC., | Case No. 8:14-bk-4208-CPM |
| CROFTON L & D MEATS HOLDINGS, LLC, | Case No. 8:14-bk-5033-CPM |
| Debtors. | *Jointly Administered Under Case No. 8:14-bk-4208-CPM* |

_____/

**ORDER GRANTING DEBTORS' EMERGENCY MOTION FOR
ENTRY OF AN ORDER (I) APPROVING BIDDING PROCEDURES IN
CONNECTION WITH THE SALE OF SUBSTANTIALLY ALL OF THEIR
ASSETS (II) ESTABLISHING PROCEDURES FOR THE ASSUMPTION AND/OR
ASSIGNMENT BY THE DEBTOR OF CERTAIN EXECUTORY CONTRACTS
AND UNEXPIRED LEASES, (III) APPROVING MINIMUM OVERBID AMOUNT AND
STALKING HORSE PROTECTION FEE, (IV) APPROVING FORM AND MANNER OF
NOTICE OF BIDDING PROCEDURES, AND (V) SETTING OBJECTION DEADLINES**

THIS CASE came before the Court for hearing on _____, 2015, at _____

__.m., to consider the *Debtors' Emergency Motion for Entry of an Order (I) Approving Bidding*

*Procedures in Connection with the Sale of Substantially All of Their Assets, (II) Establishing*

*Procedures for the Assumption and/or Assignment by the Debtor of Certain Executory Contracts*

*and Unexpired Leases, (III) Approving Minimum Overbid Amount and Stalking Horse Protection*

*Fee, (IV) Approving Form and Manner of Notice of Bidding Procedures, and (V) Setting*

*Objection Deadlines* (the "**Bid Procedures Motion**")[1] (Doc. No. ___).  The Court having

considered the Bid Procedures Motion, together with the record, and being otherwise duly

advised in the premises, finds that the relief requested in the Bid Procedures Motion is necessary

and appropriate, and that the Bid Procedures Motion is well taken and shall be granted in

---

[1] Unless otherwise defined herein, capitalized terms shall have the same meaning ascribed to them in the Bid Procedures Motion.

accordance with the terms and conditions set forth herein. Specifically, the Court finds that it would be in the best interest of the Debtors, their creditors and their estates that an orderly procedure for the selection of the highest and best offer for the sale of the Assets be established. The Court thus finds that it is appropriate to provide other prospective purchasers with the opportunity to submit competing bids such that this Order shall be sent to all creditors and parties in interest. The Court also finds that it is appropriate to require any such prospective purchasers to comply with certain requirements in connection with the submission of competing bids, and that the bidding procedures set forth herein are reasonable. The Court further finds that it is appropriate under the circumstances to approve the overbid amount (as defined below) and Stalking Horse Protection Fee (as defined below) as set forth below.

The Court finds that the Bid Procedures Motion was served upon all parties listed on the Court's mailing matrix for these cases. The Court finds that notice of the Bid Procedures Motion to creditors and other parties in interest was sufficient, that it complied with the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, and the Local Rules of this Court, and that the Debtors have proceeded in good faith. Accordingly, it is

**ORDERED** that:

1.    The Motion is granted.

2.    The Debtor shall, within five (5) business days from the date of this Order, mail a copy of this Order, by United States first class mail, to all parties and creditors on the Court's mailing matrix for these cases, and thereafter file a certificate of service with the Court.

3.    The Stalking Horse Protection Fee in the amount of One Hundred Fifty Thousand and 00/100 Dollars ($150,000) is approved.

2

Exhibit A

4.     The Court approves the following procedures (the "**Bid Procedures**") for the submission and consideration of any written competing bid ("**Bid**") by any competing bidder ("**Bidder**") for the Property:

(a)     By no later than five (5) business days after the date of entry of the Bid Procedures Order, the Debtors will serve notice of the Sale Motion and the Bid Procedures on interested parties as required by the Bid Procedures Order and the Bankruptcy Code.

(b)     On _____, 2015, the Court will conduct a hearing (the "Sale Hearing") to consider approval of the Sale Motion and the Purchase Agreement and any higher or better offers submitted in accordance with the procedures set forth in the Bid Procedures Order.

(c)     Prior to the receipt by a prospective Bidder of any information (including business and financial information and access to the Debtors) from the Debtors, each such Bidder (to the extent that it has not previously executed a confidentiality agreement) will be required to execute a confidentiality agreement in form and content acceptable to the Debtors. Confidentially Agreements will be available through the Debtors' financial advisor BDO USA, LLP ("BDO"), 32125 Solon Road, Solon, Ohio 44139 attn: Mark D. Kozel (mkozel@bdo.com)

(d)     Access to the Debtors' Books and Records; Execution of Confidentiality Agreement. All potential bidders shall be required to submit any requests for information with respect to the Debtors' businesses or Assets or requests for access to the Debtors' employees, management or officers and directors to discuss the Debtors' businesses or Assets directly to BDO, and in no event shall any bidder be granted any such access other than by means of access through BDO. Further, as a condition precedent to being provided access to the Debtors' books, records (via a virtual data room (the "Data Room") or scheduled in-person visit) and executives, all bidders must execute, sign and return a confidentiality agreement (the "Confidentiality Agreement") as provided by BDO, in form reasonably acceptable to the Debtors. Bidders who satisfy the foregoing requirement will be given reasonable access to the Debtors' books, records via a virtual data room, scheduled appointments to review records at the Debtors' office, plant tours/asset reviews, and meetings with executives, if and as applicable, before the Auction.

(e)     BDO, in concert with the Debtors and the Committee, has the authorization and will contact other potential bidders, including through advertising as applicable, to ensure the Debtors' assets are adequately marketed.

3

Exhibit A

      i.     An auction ("Auction") to consider any competing Bids in respect of the Assets will be held at the offices of Stichter, Riedel, Blain & Prosser, P.A. 110 East Madison Street, Suite 200, Tampa, Florida 33602 on _____ at ____ _.m. Eastern Daylight Time. At the Sale Hearing, the Debtors will recommend to the Court the offer that they consider to be the highest and best offer to the Debtors' estates for the Assets, after taking into account all aspects of the Bids and the Purchase Agreement (including, without limitation, the amount of the purchase price, the method and timing of the payment of the purchase price, conditions to closing, the time for closing, the representations, warranties and covenants to be provided by the Debtors and the indemnification obligations of the Debtors). The value of a Bid, for purposes of these proceedings, shall be determined by comparing, among other things, (i) the type, number and nature of any changes in the Bidder's Agreement(as defined below) requested by each Bidder, (ii) the extent to which such modifications are likely to delay the closing of the Sale to such Bidder, and the cost to the Debtors and their estates of such modifications or delay, (iii) the extent to which such Bid includes the purchase of all or less than all of the Assets, or group of Assets, (iv) the type and amount of consideration to be received by the Debtors' estates, (v) the existence of any financing, due diligence or other contingencies, (vi) the amount of any Cure Payments, which, if paid, would reduce the proceeds available for distribution to creditors, (vii) the likelihood of the Bidder's ability to close the transaction, and (viii) the net benefit to the Debtors' estates and their creditors.

(f)     All potential Bidders or their authorized representatives must be present at the Auction and the Sale Hearing. The Court will determine the highest and best offer at the Sale Hearing.

(g)     Any Bidder desiring to participate in the live Auction must submit all of the following to the Debtors' financial advisor BDO, 32125 Solon Road, Solon, Ohio 44139 attn: Mark D. Kozel no later than 5:00 P.M. EDT on _____ (the "Bid Deadline"). BDO shall immediately provide copies of bids, including all related disclosures, to: (i) the Debtors, c/o Kevin Crofton, Crofton & Sons Inc. and Crofton L&D Meats Holdings, LLC, 10250 Woodberry Road, Tampa, Florida 33619; (ii) counsel for Debtors, Scott A. Stichter; Stichter, Riedel, Blain & Prosser, P.A., 110 East Madison Street, Suite 200, Tampa, Florida 33602 (iii) counsel for the Official Committee of Unsecured Creditors (the "Committee"), Daniel A. DeMarco, Hahn Loeser & Parks LLP, 200 Public Square, Suite 2800, Cleveland, Ohio 44114; (collectively the "Notice Parties").:

      i.     Be prepared to execute an asset purchase agreement in substantially the same form of the Purchase Agreement (the

4

"Bidder's Agreement"). The Bidder shall also be required to provide a red-lined version of the Bidder's Agreement which shall reflect changes from the Purchase Agreement.

ii. Agree to pay a purchase price which is cash only (unless otherwise agreed by the Debtors).

iii. Designate those executory contracts or unexpired leases such Bidder desires the Debtors to assume and/or assign to it (the "Designated Contracts").

iv. Designate those liabilities of the Debtors such Bidder intends to assume

v. Present relevant background and financial information reasonably satisfactory to the Debtors (including without limitation the latest available audited and unaudited financial statements) demonstrating the Bidder's financial ability to close and to consummate an acquisition of the Assets, such as (1) evidence of the Bidder's ability to assume or satisfy the terms and obligations of the Bidder's Agreement, pay the purchase price provided for therein and provide adequate assurance of future performance as to any Designated Contracts pursuant to § 365 of the Bankruptcy Code and/or (2) an unconditional lending commitment from a recognized financial institution or cash sources in the amount of the Bid.

vi. Pay a good faith deposit in immediately available funds in the amount of Two Hundred Thousand and 00/100 Dollars ($200,000) (the "Bid Deposit"), which shall be made payable to Stichter, Riedel, Blain & Prosser, P.A. ("Stichter Riedel"), counsel to the Debtors, by no later than the Bid Deadline (or such later date agreed to by the Debtors). Wire instructions for the Bid Deposit will be provided upon written request made to BDO. Bidders making wire deposits shall include a copy of the wire confirmation with their bid package. The Bid Deposit shall be deposited into a non-IOTA interest-bearing trust account maintained by Stichter Riedel. Such Bid Deposit will be non-refundable to the Bidder in the event such Bidder's Bid is approved by the Court at the Sale Hearing as the highest and best offer and such Bidder fails to close on the purchase of the Assets for any reason. The Bid Deposit will be applied against the purchase price at closing. Within five (5) days following the entry of the Sale Order, Stichter Riedel will return the Bid Deposit (inclusive of any earned interest) of any Bidder that is not selected as having the highest and best offer at the Sale Hearing or designated as the Backup Bidder.

5

Exhibit A

(h)     Every Bidder's initial Bid over the offer made by the Purchaser in the Purchase Agreement, as described in paragraph 7 above, must be received no later than the Bid Deadline and must provide for: an increase of at least Twenty-Five Thousand and 00/100 Dollars ($25,000) above the purchase price offered by the Purchaser, plus the Stalking Horse Protection Fee for a total initial overbid of One Hundred Seventy-Five Thousand and 00/100 Dollars ($175,000) (the "Initial Overbid Amount"). All subsequent Bids above the initial Bid (including any subsequent Bid which may be made by the Purchaser) must be in incremental increases of at least Twenty-Five Thousand and 00/100 Dollars ($25,000) (the "Subsequent Overbid Amount" and together with the Initial Overbid Amount, the "Overbid Amounts"). All bids submitted shall be irrevocable through the Auction process.

(i)     The Debtors, in consultation with the Committee, shall have the right to reject any and all bids in its reasonable discretion; and the Debtors and/or BDO shall have the right to contact any and all Bidders at any time for the purpose of clarifying or requesting restated bids.

(j)     Any Bidder shall be entitled to submit further Bids at the Auction.

(k)     The Debtors may continue or adjourn the Auction from time to time with reasonable notice to the Qualifying Bidders.

(l)     The Debtors shall have the right to aggregate separate Bids for different Assets (as may be applicable) in determining whether one or more combination of Bids constitute the highest Qualifying Bid.

(m)     Any Bid shall not be contingent upon receipt of financing or due diligence past the Bid Deadline.

(n)     Any Bidder shall provide satisfactory evidence (as determined by the Debtors) that it is (i) financially able to consummate the transaction contemplated by such Bid and (ii) able to consummate the transaction on the date and on the terms contemplated by the Bidder's Agreement.

(o)     Any Bid shall not contain any conditions precedent to such Bidder's obligation to purchase the Assets and assume and perform any liabilities to be assumed, other than as may be included in the Purchase Agreement.

(p)     The Court shall register the second highest Bid and Bidder (the "Backup Bidder"), whose Bidder's Agreement shall be a binding contract with the Debtors and shall close, without the necessity of further Court order, in the event the successful Bidder fails to consummate the acquisition of the Assets in accordance with the provisions described above and in the Sale

6

Order.  Any closing with the Backup Bidder shall occur within ten (10) days of the notification that the successful Bidder failed to close. The Bid Deposit of the Highest and Best Bid and the Backup Bid shall be retained until the successful closing of the sale. The Bid Deposit of all other bidders shall be returned within 5 business days of the entry of the Sale Order.

(q)    The Purchaser shall only be entitled to the Stalking Horse Protection Fee in the event that the Debtors close a transaction with a third party for the sale and purchase of the Assets and the Purchaser does not bid beyond its initial Bid in the Purchase Agreement.

(r)    All objections to the transactions contemplated by the Purchase Agreement shall be filed with the Court and served on the parties set forth in subparagraph (a) above on or before the Bid Deadline.

(s)    The Debtors will file a notice with the Court at least two (2) days prior to the date of the Sale Hearing of the Bids received, and will serve such notice, by electronic mail transmission, on the above parties and counsel to all Bidders.

(t)    Sale of Assets "As Is".  All of the Assets shall be transferred "as is." THE DEBTORS SHALL BE DEEMED TO HAVE EXPRESSLY DISCLAIMED ANY IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE AND MAKES NO WARRANTY, EXPRESS OR IMPLIED, AS TO THE NATURE, QUALITY, VALUE OR CONDITION OF ANY ASSET.

5.    The Stalking Horse Protection Fee up Fee in the amount of $150,000 is hereby approved.

6.    The Court finds that the Overbid Amount is reasonable under the circumstances and approves the Overbid Amount in connection with any Bids to purchase the Property.

7.    Any creditor, lessor or other party to a Contract, or any other party in interest shall have through and including 5:00 p.m. on _____, 2015 to file an objection to the assignment of Contracts and serve the same upon counsel for the Debtors, the Committee, and the

Exhibit A

United States Trustee, at the addresses listed above, in a manner designed to assure actual receipt

by such parties by such deadline.

**DATED:** _____


_____
CATHERINE PEEK MCEWEN
United States Bankruptcy Judge


Attorney Scott A. Stichter is directed to serve a copy of this order on interested parties who are non-CM/ECF users and to file a proof of service within 3 days of entry of the order.

10790.1560630v2

8

Exhibit A

## Schedule 1.1(f)

| LOCATION | DESCRIPTION | QUANTITY |
|---|---|---|
| Fresh Sausage Kitchen | Dumper | 1 |
| Fresh Sausage Kitchen | Conveyor | 1 |
| Fresh Sausage Kitchen | AMFEC Conveyor | 1 |
| Fresh Sausage Kitchen | Handtmann Stuffer | 1 |
| Fresh Sausage Kitchen | Handtmann Linker | 1 |
| Fresh Sausage Kitchen | Magnum Label Maker | 1 |
| Fresh Sausage Kitchen | Cassel Metal Detector | 1 |
| Fresh Sausage Kitchen | Automatic Taper | 1 |
| Fresh Sausage Kitchen | Carts / Tables | 5 |
| Fresh Sausage Kitchen | Floor Scale | 1 |
| Fresh Sausage Kitchen | Z-Linker | 1 |
| Fresh Sausage Kitchen | Grinder (Dutch) | 1 |
| Fresh Sausage Kitchen | Conveyor (Dutch) | 1 |
| Fresh Sausage Kitchen | Mixer (Dutch) | 1 |
| Smoked Sausage Kitchen | Vemag Meat Tubs | 70 |
| Smoked Sausage Kitchen | Johnston Equipment Dumper | 1 |
| Smoked Sausage Kitchen | Conveyor | 1 |
| Smoked Sausage Kitchen | Weiler Grinder (course or fine) | 1 |
| Smoked Sausage Kitchen | Conveyor | 1 |
| Smoked Sausage Kitchen | AFEC Mixer | 1 |
| Smoked Sausage Kitchen | Stoke Conveyor | 1 |
| Smoked Sausage Kitchen | Wolf King Grinder (course or fine) | 1 |
| Smoked Sausage Kitchen | Risco Stuffer | 1 |
| Smoked Sausage Kitchen | Hitec Linker | 1 |
| Smoked Sausage Kitchen | Handtmann Stuffer | 1 |
| Smoked Sausage Kitchen | Handtmann Linker | 1 |
| Smoked Sausage Kitchen | Risco Stuffer | 1 |
| Smoked Sausage Kitchen | Hitec Linker | 1 |
| Smoked Sausage Kitchen | IQ Plus Scale | 1 |
| Smoked Sausage Kitchen | Sausage Trees | 57 |
| Smoked Sausage Kitchen | Hydrauflaker (Dutch) | 1 |
| Water Chilling Room | Water Chilling System | 1 |
| Packing Room | Hitec Peeler | 1 |
| Packing Room | Multivac 230 (Crofton 1) | 1 |
| Packing Room | Multivac M855 (Crofton 2) | 1 |
| Packing Room | Tiromat 2500V (Crofton 3) | 1 |
| Packing Room | IQ Scale / Labeler Magum | 3 |
| Packing Room | 3M-Matic Tape Machine | 1 |
| Packing Room | Conveyor Roll Stock Loader | 2 |
| Packing Room | Pack Off Conveyor | 1 |
| Packing Room | Safeline Metal Detector | 1 |
| Packing Room | Repak 1 (Dutch) | 1 |
| Packing Room | Repak 2 (Dutch) | 1 |
| Racking Room Cooler #5 | Smoked Meat Rack | 25 |

Exhibit A

| | | |
|---|---|---|
| Racking Room Cooler #5 | Hobart Band Saw | 2 |
| Racking Room Cooler #5 | Resier Fomaco Injector | 1 |
| Racking Room Cooler #5 | Red Arrow Brine Mixer | 1 |
| Racking Room Cooler #5 | Dumper | 1 |
| Racking Room Cooler #5 | Chute | 1 |
| Racking Room Cooler #5 | Racking Table | 1 |
| Smoker House Room | E&B Smoke Generator | 1 |
| Smoker House Room | Vemag Smoke Generator | 1 |
| Smoker House Room | Vemag Smoke Generator | 1 |
| Smoker House Room | Smoke Master Smoke Generator | 1 |
| Smoker House Room | Smoke Master Smoke Generator | 1 |
| Smoker House Room | Smoke House #1 | 1 |
| Smoker House Room | Smoke House #2 | 1 |
| Smoker House Room | Smoke House #3 | 1 |
| Smoker House Room | Smoke House #4 | 1 |
| Smoker House Room | Smoke House #5 | 1 |
| Smoker House Room | Smoke House #6 | 1 |
| Smoker House Room | Liquid Smoke Applicator | 1 |
| Warehouse | Forklift #1 | 1 |
| Warehouse | Forklift #2 | 1 |
| Boiler Room | Boiler (2013) | 1 |
| Maintenance | Electric Pressure Washer | 1 |
| Maintenance | Various Tools | 1 |
| Maintenance | Various Spare Parts | 1 |
| Warehouse | Power Walker | 2 |
| Warehouse | Battery Charger | 4 |
| Warehouse | Battery Charger | 1 |
| Various | Chemstation | 1 |
| Parking Lot | Trailmobile 48' Reefer Trailer | 1 |
| Parking Lot | 53' Storage Trailer | 1 |
| Trailer | Ross Map Sealer | 1 |
| Trailer | Multivac Rollstock | 1 |
| Outside | Air Compressor | 3 |
| SE Equipment Vaulation | Compressor | 1 |
| SE Equipment Vaulation | Condensing Unit | 1 |
| SE Equipment Vaulation | Evaporator | 1 |
| SE Equipment Vaulation | Evaporator | 1 |
| SE Equipment Vaulation | Pack Room Refrigerator | 1 |
| SE Equipment Vaulation | Mixing Value Assem | 1 |
| SE Equipment Vaulation | Air Condenser | 1 |
| SE Equipment Vaulation | Refrigerator and Thermostat | 1 |
| SE Equipment Vaulation | Dual Pressure Control | 1 |
| SE Equipment Vaulation | Compressor | 1 |
| SE Equipment Vaulation | Compressor | 1 |
| SE Equipment Vaulation | Compressor | 1 |
| SE Equipment Vaulation | ACR | 1 |
| SE Equipment Vaulation | New Refrigeration | 1 |

Exhibit A

| | | |
|---|---|---|
| SE Equipment Vaulation | Condensing Compressor | 1 |
| SE Equipment Vaulation | Keeprite Evaporators | 4 |
| SE Equipment Vaulation | Condensing Unit | 1 |
| SE Equipment Vaulation | Condensing Unit | 1 |
| Dutch List - Frig | Refrigeration - RACKING ROOM | |
| Dutch List - Frig | Refrigeration - FRESH SAUSAGE PROCESSING ROOM | |
| Dutch List - Frig | Refrigeration - SMOKED SAUSAGE PROCESSING ROOM | |
| Dutch List - Frig | Refrigeration - STORAGE COOLER 1 | |
| Dutch List - Frig | Refrigeration - STORAGE COOLER 2 | |
| Dutch List - Frig | Refrigeration - PACKING ROOM | |
| Dutch List - Frig | Refrigeration - SHIPPING/RECEIVING | |
| Dutch List - Frig | Refrigeration - FREEZER | |
| Dutch List - Frig | Refrigeration - BRINE CHILLER | |
| Dutch List - Frig | Refrigeration - BLAST 1 | |
| Dutch List - Frig | Refrigeration - BLAST 2 | |
| Dutch List - Frig | Refrigeration | |
| Dutch List - Frig | Refrigeration | |
| Dutch List - not in use | HP 10 E Stuffer with Twist Linker 1 (Dutch) | |
| Dutch List - not in use | HP 10 E Stuffer with Twist Linker 2 (Dutch) | |
| Dutch List - not in use | Column Dumper 1 (Dutch) | |
| Dutch List - not in use | Column Dumper 2 (Dutch) | |

Ford 2012 F250  1FT7W2BT8CEB98883
Ford 2013 F150  1FTFW1CT6DKD03735
Humpback Incline Boxing 2013
Smokehouse Vacuum Pump 2013
Development Studio 2 2013
Freightliner 2007 Sprinter Van Sportchass

Exhibit A

| LOCATION | DESCRIPTION | Model/Serial Number | QUANTITY |
|---|---|---|---|
| Waycross | Fomaco Injector Pump and tray | FGM64SW | 1 |
| Waycross | Biro | Pro 9 | 1 |
| Waycross | Brio Band Saw | 3334 | 2 |
| Waycross | Hobart Band Saw | 5801 | 1 |
| Waycross | Fat Back Slicer | Brio 109PC | 1 |
| Waycross | Kalmar AC Floor Pallet Jack | WF45C | 1 |
| Waycross | Biro Mixer/Grinder/Stuffer | NA | 1 |
| Waycross | Lifegueard Charger for forklift | LG18-750F3B | 1 |
| Waycross | Energic Plus Charger | TSS 36/40 | 1 |
| Waycross | Toyota Forklift | NA | 1 |
| Waycross | Total Source Pallet Jack | TSP 5500 | 1 |
| Waycross | Racking System | NA | 1 |
| Waycross | Sipromac Vacuum Packer | NA | 1 |
| Waycross | Arc Welder | AC225 | 1 |
| Waycross | Tank | NA | 1 |
| Waycross | Office Equipment | NA | 1 |
| Waycross | Computer Equipment | NA | 1 |
| Waycross | Ishida Scale | IPC | 1 |
| Waycross | Torrey Scale | EQB-20/40 | 1 |
| Waycross | Meat Racks | NA | 1 |

Exhibit A